**Electronically Filed**
**Supreme Court**
**SCWC-11-0001104**
**08-NOV-2013**
**10:08 AM**

IN THE SUPREME COURT OF THE STATE OF HAWAIʻI

---o0o---

CAAP-11-0001104
(DC-CIVIL NO. 11-1-2370)

U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE, ON BEHALF OF THE
HOLDERS OF THE ASSET BACKED SECURITIES CORPORATION HOME EQUITY
LOAN TRUST, SERIES NC 2005-HE8, ASSET BACKED PASS-THROUGH
CERTIFICATES, SERIES NC 2005-HE8,
Petitioner/Plaintiff-Appellee,

vs.

HERMINA CASTRO, STEVEN CASTRO,
CHRISTOPHER CASTRO, and ESTEBAN CASTRO,
Respondents/Defendants-Appellants.

-----------------------------------------------------------------

CAAP-11-0001105
(DC-CIVIL NO. 11-1-2365)

U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE, ON BEHALF OF THE
HOLDERS OF THE ASSET BACKED SECURITIES CORPORATION HOME EQUITY
LOAN TRUST, SERIES NC 2005-HE8, ASSET BACKED PASS-THROUGH
CERTIFICATES, SERIES NC 2005-HE8,
Petitioner/Plaintiff-Appellee,

vs.

HERMINA CASTRO, STEVEN CASTRO,
CHRISTOPHER CASTRO, and ESTEBAN CASTRO,
Respondents/Defendants-Appellants.

SCWC-11-0001104

CERTIORARI TO THE INTERMEDIATE COURT OF APPEALS
(CAAP-11-0001104; DC-CIVIL NO. 11-1-2370;
CAAP-11-0001105; DC-CIVIL NO. 11-1-2365)

November 8, 2013

RECKTENWALD, C.J., NAKAYAMA, ACOBA, MCKENNA, AND POLLACK, JJ.

OPINION OF THE COURT BY POLLACK, J.

This appeal arises out of an ejectment action instituted by Petitioner/Plaintiff-Appellee U.S. Bank National Association (U.S. Bank), as Trustee on behalf of the holders of the Asset Backed Securities Corporation Home Equity Loan Trust, Series NC 2005-HE8, Asset Backed Pass-Through Certificates, Series NC 2005-HE8, against Respondents/Defendants-Appellants Herminia Castro,[1] Steven Castro, Christopher Castro, and Esteban Castro (collectively, "Castros"). On December 13, 2011, the District Court of the Second Circuit (district court)[2] entered a judgment for possession and a writ of possession (Judgment) in favor of U.S. Bank, as well as a separate order 1) granting summary judgment in favor of U.S. Bank; 2) granting Steven and Christopher's motion to set aside entry of default; 3) denying Herminia's motion for leave to file an answer and counterclaim

---

[1]    Herminia's name is spelled alternatively as "Herminia" and "Hermina" in the record on appeal. "Herminia" is used in this opinion to remain consistent with the defendants' pleadings.

[2]    The Honorable Kelsey T. Kawano presided.

-2-

against U.S. Bank; and 4) denying Herminia's motion to dismiss for lack of subject matter jurisdiction (Order).

In its application for writ of certiorari, U.S. Bank seeks review of the April 16, 2013 Judgment on Appeal of the Intermediate Court of Appeals (ICA) filed pursuant to its March 14, 2013 Memorandum Opinion, vacating the district court's Judgment and Order, and remanding to the district court with instructions to dismiss the case for lack of jurisdiction.[3] For the reasons set forth herein, we hold that the district court properly exercised subject matter jurisdiction over the case because the Castros failed to demonstrate that the action was one in which title to the subject property would come into question.

## I. BACKGROUND

### A.

In 2002, Herminia and her husband purchased a property located in Kahului, Hawaiʻi (Property). Herminia and her husband owned the Property in fee simple as tenants by the entirety. After the death of her husband in 2005, Herminia decided to refinance the existing mortgage on the Property. She and her son, Sonny Castro, applied for a loan with New Century Mortgage Corporation (New Century). On August 9, 2005, Herminia and Sonny

---

[3]     The Honorable Daniel R. Foley, Lawrence M. Reifurth, and Lisa M. Ginoza presided.

executed a promissory note (Note) for the amount that was borrowed.

On August 10, 2005, Herminia and Sonny also executed and delivered to New Century a mortgage (Mortgage) encumbering the Property. The Mortgage was recorded on August 13, 2005 with the State of Hawaiʻi Bureau of Conveyances (Bureau). Herminia and Sonny thereafter claimed a shared interest in the Property as joint tenants.

On August 18, 2005, the Mortgage was assigned to U.S. Bank. The Assignment of Mortgage was recorded with the Bureau on December 8, 2006.

On March 3, 2009, due to Herminia and Sonny's failure to make the scheduled payments as set forth in the Mortgage and Note, a letter titled "Demand Letter - Notice of Default" was sent to Herminia and Sonny by Select Portfolio Servicing, Inc. (SPS), a loan servicing company employed by U.S. Bank. The letter provided that it constituted "formal notice of default" under the terms of the Note and Mortgage. The letter described the actions required to cure the default and to dispute delinquency.

Subsequently, a "Notice of Mortgagee's Non-Judicial Foreclosure Under Power of Sale," stating U.S. Bank's intention to foreclose and sell the Property at a foreclosure auction on

January 25, 2011, was sent to the Castros by U.S. Certified Mail. The notice was signed for and received by Herminia on November 24, 2010,[4] and by the Director of Taxation on November 29, 2010. In addition, the notice was posted on the Property on December 21, 2010, more than twenty-one days prior to the scheduled foreclosure sale. On December 1, 8, and 15, 2010, more than fourteen days prior to the foreclosure sale, notice of foreclosure was published in The Maui News.

The foreclosure sale was thereafter rescheduled to March 29, 2011. Notice of the rescheduled date and time was published in The Maui News, posted on the Property, and sent to the Director of Taxation, Herminia, and Sonny via U.S. Certified Mail. The notice was signed for and received by the Director and Herminia on February 25 and February 26, 2010, respectively.

On March 29, 2011, the foreclosure auction was held and the Property was purchased by U.S. Bank. On April 8, 2011, the Mortgagee's Affidavit of Foreclosure Under Power of Sale (Mortgagee's Affidavit of Foreclosure) was recorded with the Bureau.

---

[4] In separate mailings, similar notices were sent to Sonny and Rolando Taasan, one of the co-owners of the Property, via U.S. Certified Mail on November 24, 2010.

Rolando Taasan was named as a grantee in a quitclaim deed recorded on November 5, 2007 in the Bureau. He is listed as "an unmarried man, as tenant in severalty, as to an undivided one percent (1%) interest, as tenants in common." His relationship to the Castros is not explained in the record.

After a second unsuccessful delivery attempt on December 2, 2010, both mailings were returned unclaimed on December 10, 2010.

On April 26, 2011, U.S. Bank sent a letter addressed to "Former Owner And/or Tenant, Known or Unknown [at the Property]," instructing the recipients to vacate the Property within ten calendar days. On July 29, 2011, U.S Bank recorded a Quitclaim Deed with the Bureau, identifying U.S. Bank as the grantee of the Property.

B.

Following Herminia and Sonny's failure to vacate the Property as instructed, U.S. Bank filed two Verified Complaints for Summary Possession and Ejectment (collectively, "Complaint") in the district court on August 24, 2011.[5] The Complaint alleged that U.S. Bank was the fee simple owner of the Property, and the Castros were "one or more of the . . . persons still occupying the Property without consent and permission of U.S. Bank."

On September 12, 2011, the district court conducted a Return Hearing wherein Herminia was present and entered a general denial to the Complaint. Default was entered as to Steven and Christopher, Herminia's sons, who did not appear at the hearing.

On October 27, 2011, U.S. Bank filed a Motion for Summary Judgment and Writ of Possession (Motion for Summary

---

[5]     U.S. Bank filed two separate actions because the Property contains a "main house," which was the subject of Civil No. 11-1-2365, and a "cottage," which was the subject of Civil No. 11-1-2370. These matters were consolidated pursuant to the ICA's May 17, 2012 order granting the Castros' motion to consolidate the cases. The record only contains the Complaint filed for Civil No. 11-1-2370.

Judgment), requesting that the court enter a judgment for possession and writ of possession in favor of U.S. Bank and against the Castros, enter a final judgment under District Court Rules of Civil Procedure (DCRCP) Rule 54(b), and schedule a trial on damages to be proved after the Castros vacated the Property. Attached as exhibits to the motion were certified copies of the following documents recorded in the Bureau: (1) April 8, 2011 Mortgagee's Affidavit of Foreclosure; (2) July 29, 2011 Quitclaim Deed; (3) August 18, 2005 Mortgage; and (4) December 8, 2006 Assignment of Mortgage.

In support of its Motion for Summary Judgment, U.S. Bank argued that it had established its superior title to the Property, as evidenced by the attached Mortgagee's Affidavit of Foreclosure and Quitclaim Deed. U.S. Bank contended that it had been the record title holder of the Property since July 29, 2011 pursuant to the Quitclaim Deed, and the Castros had continued to occupy the premises rent free. U.S. Bank also argued that the Castros had failed to raise a legitimate issue of a title dispute under DCRCP Rule 12.1.

On November 7, 2011, the Castros filed four pleadings in response to U.S. Bank's Motion for Summary Judgment.

First, Herminia filed a Motion for Leave to File Answer and Counterclaim against U.S. Bank (Motion for Leave). Herminia sought to "assert counterclaims against Plaintiff seeking to set

aside the foreclosure as being invalid and void, seeking damages for a wrongful foreclosure, and to quiet title." U.S. Bank opposed the motion, arguing that "[a]ny leave afforded the Defendant would be an act of futility inasmuch as Defendant admits its claim is an action to quiet title action and is therefore outside this court's jurisdiction."

Second, Steven and Christopher filed a Motion to Set Aside Entry of Default. They conceded that they did not appear at the September 12, 2011 Return Hearing, but argued that they were not aware that they were required to appear personally before the court, as they believed Herminia could enter a general denial on their behalf. They therefore sought to set aside the default. A declaration by Herminia in support of the motion was also submitted.

Third, Herminia filed a Motion to Dismiss Plaintiff's Complaint for Lack of Subject Matter Jurisdiction (Motion to Dismiss) pursuant to DCRCP Rules 7 and 12.1. Herminia argued that the Castros disputed the validity of U.S. Bank's title to the Property. Specifically, Herminia contended that "the underlying [loan] transaction is void based on fraud in the inducement or unfair and deceptive acts and practices in violation of Hawaiʻi Revised Statutes [(HRS)], Chapters 480 and 481" because Herminia should not have qualified for the Mortgage based on her income.

Additionally, Herminia argued that U.S. Bank was not the real party in interest because the original loan had been taken with New Century. Herminia contended that there was "likely a break in the chain of title to the note and mortgage, making this loan unsecured, and voiding any foreclosure on the Property." Accordingly, Herminia argued that "title is in dispute" and the district court lacked subject matter jurisdiction over the case.

Attached to the Motion to Dismiss was Herminia's declaration, which purported to set forth the source, nature, and extent of the title claimed.[6] Herminia expressed her belief that U.S. Bank may not own the Note and Mortgage and that U.S Bank may not be able to foreclose due to defects in the transfer of the loan documents. Herminia also stated that she had requested a loan modification from SPS and the company refused to consider her request for relief.

Fourth, Herminia filed a Memorandum in Opposition to U.S. Bank's Motion for Summary Judgment. Herminia requested additional time to respond to the motion and to conduct discovery related to the underlying loan transaction with New Century. She stated that she intended to conduct a title search and to obtain an expert report concerning the securitization, sale, and

---

[6]    The declaration attached to the Motion to Dismiss was not signed. The original signed declaration was later submitted on November 18, 2011.

transfer of the Note and Mortgage in order to demonstrate that U.S. Bank was not the real party in interest.

At a hearing held on November 18, 2011, the district court granted U.S. Bank's Motion for Summary Judgment and granted Steven and Christopher's Motion to Set Aside Entry of Default.[7] The court denied Herminia's Motion for Leave and Motion to Dismiss.

On December 13, 2011, the district court entered a judgment for possession and a writ of possession in favor of U.S. Bank, concluding that U.S. Bank was entitled to possession of the Property. On the same day the district court entered an order 1) granting U.S. Bank's Motion for Summary Judgment; 2) granting Steven and Christopher's Motion to Set Aside Entry of Default; 3) denying Herminia's Motion for Leave; and 4) denying Herminia's Motion to Dismiss.

---

[7]   A transcript of the hearing was not included in the record on appeal. The Castros, as appellants, had the burden of providing the relevant transcripts. Hous. Fin. & Dev. Corp. v. Ferguson, 91 Hawaiʻi 81, 92, 979 P.2d 1107, 1118 (1999) ("We have stated that 'the burden is upon appellant in an appeal to show error by reference to matters in the record, and he has the responsibility of providing an adequate transcript.'") (quoting Bettencourt v. Bettencourt, 80 Hawaiʻi 225, 230, 909 P.2d 553, 558 (1995)) (brackets omitted).

II. APPEAL

A.

On appeal to the ICA, the Castros argued in relevant part that the district court erred in denying Herminia's Motion to Dismiss because Herminia's declaration in support of the motion had demonstrated that the action was one in which title to real estate would come into question.[8]

In this regard, the Castros argued that they properly raised a defense to the district court's subject matter jurisdiction pursuant to DCRCP Rule 12.1, by submitting Herminia's declaration in support of the Motion to Dismiss, which set forth the source, nature, and extent of the title in a manner that fully apprised the court of the nature of the Castros' claim.  Specifically, the Castros argued that Herminia's declaration established that she and her husband purchased the Property from prior owners in 2002, that they owned the property in fee simple as tenants by the entirety, that after her husband died in 2005 she obtained title by succession, and that when she refinanced the loan with her son, she was "misled" regarding her ability to make the loan payments.  Additionally, the declaration

_____

[8]     The Castros also argued that the district court erred by granting summary judgment: 1) without granting them additional time for discovery prior to the hearing; 2) despite "the insufficiency of [U.S. Bank's] moving papers," and U.S. Bank's failure to carry its burden of proof on all affirmative defenses; and 3) without affording due process to Christopher and Steven.

-11-

established that Herminia was not aware that the loan was sold to U.S. Bank, and "based on information and belief US Bank did not own the note and mortgage and would not be able to foreclose due to defects in the transfer of the loan documents."

U.S. Bank argued in response that the district court appropriately granted its Motion for Summary Judgment and denied Herminia's Motion to Dismiss because the declarations submitted by the Castros failed to state the source, nature and extent of the Castros' title claim with the requisite details and specificity.[9]  Rather, U.S. Bank contended that the declarations "were merely an attempt to challenge the underlying foreclosure, not to affirmatively state [the Castros'] claim to title."

B.

On March 14, 2013, the ICA issued its Memorandum Opinion.  U.S. Bank Nat'l Ass'n v. Castro, Nos. CAAP-11-0001104, CAAP-11-0001105, 2013 WL 1091714 (Haw. App. Mar. 14, 2013) (mem.).

The ICA determined that Herminia's declaration adequately "apprised the court that Herminia Castro acquired title by succession after her husband's death, that she refinanced the mortgage on the Property with her son, and that

_____

[9]      U.S. Bank refers to Herminia's declaration submitted in support of Steven and Christopher's Motion to Set Aside Entry of Default, as well as Herminia's declaration submitted in support of her Motion to Dismiss.  The ICA only addressed the latter declaration.  See 2013 WL 1091714, at *3.

she claims an undivided interest in fee simple with her son." Id. at *3. In addition, the ICA concluded that Herminia's declaration and Motion to Dismiss, which alleged that "the underlying transactions involving the Property were void" because they were "based on fraud in the inducement or unfair and deceptive acts and practices," sufficiently "apprised the court of Defendants' claim that the non-judicial foreclosure was void and that Defendants retained title." Id.

Accordingly, the ICA held that the "declaration contained sufficient information regarding the source, nature, and extent of title claimed by Defendants" in satisfaction of DCRCP Rule 12.1, and the district court therefore lacked subject matter jurisdiction. Id. In light of its conclusion, the ICA did not address the Castros' remaining points of error on appeal.[10] Id. The court vacated the district court's Judgment and Order, and remanded the case with instructions to dismiss for lack of jurisdiction. Id. at *1.

C.

In its application to this court, U.S. Bank contends that the Castros failed to satisfy the requirements of DCRCP Rule 12.1 by sufficiently setting forth the source, nature, and extent of the title claimed in the Property. U.S. Bank argues that

_____

[10]    See supra note 8.

-13-

Hawaiʻi courts have "consistently recognized that vague and conclusory claims to title will not support a defense to the District Court's jurisdiction in suits concerning real property." Rather, "a defendant must 'show affirmatively' in his affidavit that he or she has a basis for claiming superior title."

U.S. Bank argues that Herminia's declarations failed to meet the above standard for showing a claim to title, as they "allege only that she was given a loan that she could not afford and that [U.S. Bank] may not have standing to foreclose."

### III. DISCUSSION

#### A.

"'The existence of subject matter jurisdiction is a question of law' that is 'reviewable *de novo* under the right/wrong standard." Aames Funding Corp. v. Mores, 107 Hawaiʻi 95, 98, 110 P.3d 1042, 1045 (2005) (quoting Lester v. Rapp, 85 Hawaiʻi 238, 241, 921 P.2d 502, 505 (1997)) (brackets omitted).

HRS § 604-5(d) (Supp. 2011) "precludes the district courts of this state from exercising jurisdiction in 'real actions . . . in which the title to real estate comes into question.'"[11] Deutsche Bank Nat'l Trust Co. v. Peelua, 126

---

[11]    HRS § 604-6 (1993), governing ejectment proceedings, provides that "[n]othing in section 604-5 shall preclude a district court from taking jurisdiction in ejectment proceedings where the title to real estate does not come in question at the trial of the action."

Hawaiʻi 32, 36, 265 P.3d 1128, 1132 (2011) (quoting HRS § 604-5(d)) (brackets omitted). "Pursuant to DCRCP Rule 12.1, where a defendant seeks to assert, as a defense to the jurisdiction of a district court, that the action is one in which title to real estate will come into question, the defendant must raise such a defense in a written answer or written motion, and must attach an affidavit thereto."[12] Id. The affidavit must "set[] forth the source, nature and extent of the title claimed by [the] defendant to the land in question, and such further particulars as shall fully apprise the court of the nature of defendant's claim." DCRCP Rule 12.1.

"This court has explained that DCRCP Rule 12.1 is derived from an order to district courts that was issued on March 1, 1895." Peelua, 126 Hawaiʻi at 36, 265 P.3d at 1132. Prior to the issuance of that order, mere "entry of a plea to

---

[12] DCRCP Rule 12.1 (2011) provides:

**Rule 12.1. Defense of title in district courts.**

> **Pleadings.** Whenever, in the district court, in defense of an action in the nature of an action of trespass or for the summary possession of land, or any other action, the defendant shall seek to interpose a defense to the jurisdiction to the effect that the action is a real action, <u>or one in which the title to real estate is involved</u>, such defense shall be asserted by a written answer or written motion, which shall not be received by the court unless accompanied by an affidavit of the defendant, setting forth the source, nature and extent of the title claimed by defendant to the land in question, and such further particulars as shall fully apprise the court of the nature of defendant's claim.

(Emphasis added).

jurisdiction, without more, ousted a district court of jurisdiction." Monette v. Benjamin, 52 Haw. 246, 247, 473 P.2d 864, 865 (1970). "Such situation was fraught with opportunity for abuse, and gave considerable concern to the court, which stated in [Coney v. Manele, 4 Haw. 154 (Haw. Kingdom 1879)], 'If dishonest pleas should be set up by defendants, undoubtedly effectual means will be found to obviate the effects of such dishonesty.'" Monette, 52 Haw. at 247, 473 P.2d at 865.

In Ward v. Kamanaoulu, 9 Haw. 619, 621 (Haw. Rep. 1895), the court followed precedent and held that the district court was divested of jurisdiction when the defendant admitted to digging a ditch on the plaintiff's land but asserted, without explanation, that he claimed title to the plaintiff's land. The court explained that it felt "obliged to follow the precedents of this court and sustain such pleas without further proof—there being no statute nor rule requiring more." Id. However, the court acknowledged that it was "aware of the mischiefs that are likely to occur where reckless or dishonest pleas of this character may be set up, compelling parties in the maintenance of their possession of land to resort to the higher courts for pursuit of their remedies." Id. at 621. The court therefore declared that "[a] rule will be made to apply to future cases." Id.

-16-

The 1895 order from which DCRCP Rule 12.1 is derived was issued four days after the court's opinion in Ward. Monette, 52 Haw. at 248, 473 P.2d at 865.

In Monette, this court considered the defendants' claim that the district court lacked jurisdiction over a summary possession action based on a question of title, pursuant to HRS § 604-5. 52 Haw. 246, 473 P.2d 864. The court considered the sufficiency of the defendant's affidavit setting forth the source, nature, and extent of the title claimed by the defendant. Id. at 247-49, 473 P.2d at 864-66. The court held that the affidavit "set forth all of the information called for in the rule,"[13] where the affidavit demonstrated that the defendant claimed title to the land through intestate succession:

> A fair reading of the affidavit show[ed] that [the defendant] claimed title to the land in question by inheritance from her father, who in turn had inherited from his father, and that the title claimed by her was an undivided one-sixth interest in fee simple, which descended to her by intestate succession from the immediately preceding sole owner.

Id. at 248, 473 P.2d at 865. Although the court noted that the defendant's claim of title "could have been described more precisely," the affidavit adequately "put in issue the title to the land involved." Id. at 248-49, 473 P.2d at 865.

---

[13] At the time, the rule was contained in Rule 14 of the district court rules. Id. at 247, 473 P.2d at 865.

On the contrary, in Aames Funding Corp., 107 Hawaiʻi at 98-100, 110 P.3d at 1045-47, the court held that the defendants' joint declaration objecting to the district court's exercise of jurisdiction pursuant to Rule 12.1 was insufficient.  Similar to this case, the plaintiff in Aames acquired title to the property through a non-judicial foreclosure sale.  Id. at 96-97, 110 P.3d at 1043-44.  The defendants refused to surrender possession of the property, and the plaintiff subsequently filed an action for ejectment against the defendants in the district court.  Id. at 97, 110 P.3d at 1044.  The defendants filed a "Rule 12.1 Joint Declaration . . . Objecting to Subject Matter Jurisdiction," in which the defendants declared, "[T]his action involves a dispute as to title to real property," and "We claim that we have title to the Property."  Id. at 97, 99, 110 P.3d at 1044, 1046 (brackets omitted).  The defendants also filed a motion to dismiss based on lack of subject matter jurisdiction.  Id. at 97, 110 P.3d at 1044.

On appeal, this court held that the defendants' declaration did not satisfy Rule 12.1 because the declaration "merely asserts that title was at issue, and fails to provide information as to the source, nature, and extent of the claim." Id. at 99, 110 P.3d at 1046 (quotation marks omitted).  The court noted that the defendants' declaration and memorandum of law "include[d] statements objecting to the manner in which the

-18-

Mortgage was consummated[,] such as the purported lack of an explanation of the 'power of sale' clause or of an appended copy of the [federal Truth-In-Lending Act] 'Notice of Right to Cancel.'"  Id.  However, the court explained that "[n]one of these matters . . . are germane to informing the court as to the source, nature, and extent of the title claimed by the [defendants] as to the land in question."  Id. (quotation marks omitted) (emphases added).

Most recently in Peelua, this court clarified the level of specificity required by Rule 12.1.  126 Hawaiʻi at 36-37, 265 P.3d at 1132-33.  The court first explained that "[u]nder the plain language of Rule 12.1, an affidavit that raises a defense to the court's jurisdiction must set forth 'the source, nature, and extent of the title claimed by defendant' and 'further particulars' sufficient 'to fully apprise the court of the nature of defendant's claim.'"  Id. at 36, 265 P.3d at 1132.  The court then reasoned that the phrase "further particulars" in the rule suggests that the affidavit "must include some details or specificity regarding the nature of the defendant's claim":

> The phrase "*further* particulars" indicates that the reference to "source, extent, and nature" of the claim are "particulars" of the defense, whose purpose is to "fully apprise" the court of the defendant's claim to title. Although DCRCP Rule 12.1 does not define the term "particulars," that term suggests that the affidavit must include some details or specificity regarding the nature of the defendant's claim.

-19-

Id. at 36-37, 265 P.3d at 1132-33 (citations omitted).  Based on the plain language of Rule 12.1, the court concluded that "the source, nature, and extent of title claimed by the defendant, <u>must be described to the court with some detail and specificity</u>." Id. at 376, 265 P.3d at 1132 (emphasis added).  Additionally, "the defendant may also include in the affidavit any other particulars, <u>the objective being to apprise the court fully of the nature of the defendant's claim</u>."  Id. at 37, 265 P.3d at 1133 (emphasis added).

In Peelua, the plaintiff alleged that it was the fee simple owner of the subject property by virtue of a non-judicial foreclosure sale.  Id. at 34, 265 P.3d at 1128.  The defendant refused to relinquish the property, and the plaintiff subsequently filed a complaint requesting immediate possession of the property.  Id.  The defendant alleged that the district court lacked jurisdiction pursuant to Rule 12.1 and attached an affidavit to the motion to dismiss providing in relevant part:

> 5. *I am the owner of the Property identified in the Complaint filed in this matter.* Because of time constraints, I cannot file a copy of my Deed to the property with this affidavit, but I will furnish a copy of the Deed as soon as I can.
>
> 6. The Property identified in the Complaint *consists of lands which have been owned by* [the defendant's] *family for generations, going back to the time of the Great Mahele.*
>
> 8. The Property has passed down though [sic] my family over time, and it was eventually *deeded to me by my family.*

> 10. I was defrauded, duped, coerced and tricked into engaging in transaction which involve[d] the Property in the Complaint.

Id. at 35, 265 P.3d at 1131 (ellipses and brackets omitted).

On appeal, the Peelua court held that "[s]imilar to the affidavit in *Aames*, [the defendant] states only in a vague and conclusory fashion that he owns the Property and that title was deeded to him by his family." Id. at 38, 265 P.3d at 1134. The court explained that the defendant's affidavit was deficient in several respects. First, as compared to the affidavit in Monette, the defendant's affidavit "lack[ed] any specificity with respect to the source of title." Id. Second, as to the nature of the claim, the defendant merely asserted that he had a deed to the property but did not "describe the contents of the deed or the type of deed he acquired." Id. In comparison, the court in Monette "was able to discern that [the defendant] was claiming an interest 'in fee simple' by virtue of 'intestate succession.'" Id. Finally, the affidavit "lack[ed] detail or information regarding the extent of title claimed." Id. In Monette, the court was able to deduce that the defendant was claiming an undivided one-sixth interest in title. Id.

With respect to the defendant's claim that he was "'defrauded, duped, coerced and tricked' into engaging in transactions involving the Property," the court held that "without further detail," the court could not ascertain "how or

whether the allegation has any bearing on title to the Property."
Id. Accordingly, the court concluded that the defendant had
failed to establish that title was in question. Id. at 39, 265
P.3d at 1135.

In this case, the ICA held that Herminia's declaration
attached to her Motion to Dismiss satisfied the requirements of
DCRCP Rule 12.1 because the declaration apprised the district
court that Herminia "acquired title by succession after her
husband's death, that she refinanced the mortgage on the Property
with her son, and that she claims an undivided interest in fee
simple with her son." 2013 WL 1091714, at *3. The ICA based its
decision on the following portions of the declaration:

> 3. Herminia Castro and her husband purchased the Property
> from the prior owners in 2002.
>
> 4. She and her husband owned the property in fee simple as
> tenants by the entirety.
>
> 5. Her husband died in 2005.
>
> 6. She owned the property after her husband died.
>
> . . . .
>
> 13. She and her son made a mortgage refinance loan with New
> Century Mortgage Corporation.
>
> . . . .
>
> 22. She and her son hold title as joint tenants having
> acquired the property from Herminia Castro, who acquired
> title from Herminia Castro and her husband, now deceased,
> and title was recorded in the names of Herminia Castro [and
> Sonny Castro] as Joint Tenants.

Id. (brackets omitted). Based on these provisions, the ICA
likened Herminia's affidavit to the defendant's affidavit in

Monette and concluded that "the declaration contained sufficient information regarding the source, nature, and extent of title claimed by Defendants."  Id.

However, the nature of the claim of title asserted by Herminia in her declaration and in her Motion to Dismiss is completely unlike the nature of the claim of title asserted in Monette.  In Monette, the defendant claimed title to the land by inheritance and intestate succession.  52 Haw. at 248, 473 P.2d at 865.  In this case, Herminia is not seeking to establish her claim of title to the Property based on lineal descent or based on a superior claim to another party.  Herminia's claim is only that there may have been problems with the refinanced loan transaction with New Century and with the assignment of the Note and Mortgage from New Century to U.S. Bank.

Specifically, Herminia's claim, as argued in her Motion to Dismiss, is that U.S. Bank does not have a claim of title to the Property because 1) the underlying loan transaction is void because Herminia should not have qualified for the Mortgage in the first instance and only obtained the loan through predatory lending practices; 2) U.S. Bank is not the "real party in interest," as Herminia's original loan was with New Century and there was "likely a break in the chain of title to the note and mortgage" due to the manner in which loans are typically "securitized and sold"; and 3) the foreclosure was wrongful

-23-

because Herminia's request for a loan modification upon refinancing was denied despite her financial hardship.

Accordingly, the relevant portions of Herminia's declaration are not those paragraphs cited by the ICA, but the paragraphs related to Herminia's loan with New Century and the subsequent assignment of the Note and Mortgage to U.S. Bank:

> 7. She had difficulty paying the mortgage and wanted to refinance.
>
> 8. She and her son, Sonny, applied for a loan with [New Century].
>
> 9. She understood her loan payment was $2600.
>
> 10. She relied on her income of $3300 and contribution from her son to make the payments.
>
> 11. She did not know and was not told that her loan payment would adjust to $3600.
>
> 12. If she had known or been told her payment was more than her income and knowing her son was not able to contribute more money to her to pay the mortgage, she would not have refinanced with New Century.
>
> . . . .
>
> 15. At no time was she informed her loan was sold to [U.S. Bank] . . . .
>
> 16. She had no dealings with US Bank.
>
> 17. She asked [SPS] for a loan modification and they would not consider her for relief.
>
> 18. She is currently <u>informed and believes that US Bank may not own her note and mortgage and may not be able to foreclose due to defects in transfer of the loan documents</u>.
>
> . . . .
>
> 21. She has been informed she should obtain a securitization expert report and that <u>it is believed such a report will establish a break in the chain of title of the loan documents which should invalidate the ability of Plaintiff US Bank to foreclose</u>. The original loan was sold. The note and mortgage had to be sold and transferred between the originator to an Issuing Entity who accumulates loans from different entities in order to be bundled and sold to

-24-

> investors, and after enough loans are accumulated, the loans are sold to a sponsor who combines the loans into a pool and sells them to a depositor. . . . The pools are supposedly represented by a Trustee who monitors servicing . . . . The servicer collects payments from borrowers and passes the cash flows to the trustee. The servicer advances payments due from borrowers. The assets need to be properly transferred into the trust prior within 90 days of the closing date of the trust, and this requires a proper chain of endorsements of the note and proper assignments of the mortgage or deed of trust. <u>Based on information and belief, there is a genuine issue as to who owns the note and has the right to enforce the note</u>.

(Emphases added).

Contrary to the ICA's holding, the above paragraphs of Herminia's declaration are not sufficient to apprise the court of the source, nature and extent of Herminia's claim of title. Rather, similar to the defendant's affidavit in <u>Peelua</u>, Herminia's declaration "states only in a vague and conclusory fashion" that she claims title to the Property, fails to describe the nature of her claim with any specificity, and is generally lacking in "detail or information regarding the extent of title claimed." 126 Hawaiʻi at 38, 265 P.3d at 1134.

In <u>Peelua</u>, the court held that the defendant's claim that he was "defrauded, duped, coerced, and tricked" into engaging in transactions involving the subject property, without further detail, was insufficient to establish a claim of title because it could not "be ascertained how or whether the allegation has any bearing on title to the Property." 126 Hawaiʻi at 38, 265 P.3d at 1134. In <u>Aames Funding Corp.</u>, the court held that "statements objecting to the manner in which the

-25-

Mortgage was consummated" are not "germane to informing the court as to the source, nature, and extent of the title claimed[.]" 107 Hawaiʻi at 99, 110 P.3d at 1046 (quotation marks omitted). Here, Herminia's allegations of fraud in the underlying loan transaction are lacking in detail, and the Castros have failed to demonstrate what bearing the allegations, even if true, would have on title to the Property.[14]

With respect to Herminia's claim that she is "<u>informed and believes</u>" that "U.S. Bank <u>may</u> not own her note and mortgage and <u>may</u> not be able to foreclose due to defects in transfer of the loan documents," (emphases added), the assertion is speculative and lacking the type of "detail and specificity" required by Rule 12.1. <u>See</u> <u>Peelua</u>, 126 Hawaiʻi at 37, 265 P.3d at 1133. Herminia's declaration describes a general process by which loans are typically securitized and sold, and provides that "<u>it is believed</u>" that a "securitization expert report . . . will

---

[14] In any event, Herminia's mere allegation that she qualified for a loan she could not afford, does not establish fraud in the underlying loan transaction. Neither Herminia's declaration nor the Motion to Dismiss "provide[d] a discernible factual or legal argument" demonstrating that the loan with New Century involved any of the three types of fraud recognized in the mortgage context; fraud in the factum, fraud in the inducement, or constructive fraud. <u>Aames Funding Corp.</u>, 107 Hawaiʻi at 103-04, 110 P.3d at 1050-51.

Similarly, Herminia's declaration and Motion to Dismiss lacked any facts or legal arguments supporting her claims of unfair or deceptive trade practices with respect to the underlying loan transaction. She argued only that New Century "had to know" that she could not afford the refinanced loan. <u>Cf.</u> <u>Haw. Cmty. Fed. Credit Union v. Keka</u>, 94 Hawaiʻi 213, 217, 228-29, 11 P.3d 1, 5, 16-17 (2000) (finding genuine issue of material fact as to whether loan officer negotiated loan with consumers in a deceptive manner, based on consumers' allegation that officer represented that it would be "no problem" to later change the interest rate on mortgage).

establish a break in the chain of title of the loan documents."
(Emphasis added).  This general description does not establish
how or whether the manner in which the Note and Mortgage were
assigned to U.S. Bank affects Herminia's claim of title to the
Property.  See Peelua, 126 Hawaiʻi at 38, 265 P.3d at 1134
(assertion of fraud in underlying transaction insufficient to
establish claim of title where it could not "be ascertained how
or whether the allegation has any bearing on title to the
Property").

Finally, Herminia's claim that the foreclosure was
wrongful because she was denied a loan modification is also
stated in a vague and conclusory manner.  Her declaration does
not establish how the lack of a loan modification would affect
her claim of title.

Thus, Herminia's declaration in support of her Motion
to Dismiss for lack of jurisdiction did not contain the detail
and specificity of the source, nature and extent of the title
claimed that is required by DCRCP Rule 12.1.  Permitting the type
of vague, speculative hypotheticals of a defect in the chain of
title that the Castros assert would contravene the purpose of the
rule, which is to "apprise the court fully of the nature of the
defendant's claim," Peelua, 125 Hawaiʻi at 37, 265 P.3d at 1133.
Accordingly, the ICA erred in determining that the district court

lacked subject matter jurisdiction over the case pursuant to DCRCP Rule 12.1.

## B.

In light of our conclusion, we address the remaining points of error raised by the Castros in their appeal to the ICA, see supra note 8, which the ICA did not address.  See 2013 WL 1091714, at *3.

## 1.

The Castros argued to the ICA that the district court erred by failing to grant them additional time for discovery prior to granting summary judgment in favor of U.S. Bank. Herminia's memorandum in opposition to the Motion for Summary Judgment sought additional time for discovery related to "issues with regard to the underlying transaction."

The Castros argued to the ICA that additional discovery was required to conduct "a title search and [to] obtain[] an expert report concerning the securitization, sale and transfer of the underlying promissory note and mortgage."  The Castros contended that there are "problems inherent" in the "securitization, sale and transfer of notes and mortgages," such as "predatory lending practices," and that these problems "should invalidate the underlying transaction based upon fraud . . . or on unfair and deceptive acts and practices."  The Castros argued that an "expert report would establish if the loan was in fact

sold on the secondary market, and through whom these loans were sold such that we could then track whether or not . . . there were proper assignments of the mortgage and endorsement, transfer and receipt of the notes."

Hawaiʻi Rules of Civil Procedure (HRCP) Rule 56(f) (2000) pertaining to motions for summary judgment provides that the court may order a continuance to permit discovery if "it appear[s] from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition[.]" This court has held that

> [a] trial court's decision to deny a request for a
> continuance pursuant to HRCP Rule 56(f) . . . will not be
> reversed absent an abuse of discretion. Additionally, the
> request must demonstrate how postponement of a ruling on the
> motion will enable him or her, by discovery or other means,
> to rebut the movants' showing of absence of a genuine issue
> of fact.

Acoba v. Gen. Tire, Inc., 92 Hawaiʻi 1, 9-10, 986 P.2d 288, 296-97 (1999) (quotation marks, citations and brackets omitted) (emphasis added).

In this case, the Castros failed to show how the proposed discovery, the purpose of which was to contest the underlying loan transaction and foreclosure, would demonstrate a genuine issue of material fact as to U.S. Bank's entitlement to a judgment for possession and writ of possession.

This court has recognized that nonjudicial foreclosure statutes have a three-fold purpose:

> First, the nonjudicial foreclosure process should protect the debtor from a wrongful loss of property; second, the process should ensure that *properly conducted sales* are final between the parties and conclusive as to bona fide purchasers; and third, the process should give creditors a quick, inexpensive remedy against defaulting debtors.

Lee v. HSBC Bank USA, 121 Hawaiʻi 287, 291, 218 P.3d 775, 779 (2009) (citation and quotation marks omitted) (underline emphasis added). Therefore, a significant purpose of the nonjudicial foreclosure process is to ensure that the sale that results is final between the parties.

In this case, the record demonstrates that U.S. Bank properly conducted a nonjudicial foreclosure sale. U.S. Bank's Motion for Summary Judgment included certified copies of the Mortgagee's Affidavit of Foreclosure, Quitclaim Deed, Mortgage, and Assignment of Mortgage. These documents established a direct chain of title from the original lender, New Century, to U.S. Bank, which became the holder of the Note and Mortgage on the Property. When Herminia failed to make the loan payments, notice of default was sent to the Castros in compliance with the requirements of the Mortgage, and a Notice of Mortgagee's Non-Judicial Foreclosure Under Power of Sale was served by certified mail on all relevant parties, posted on the property, and published in The Maui News. U.S. Bank was the highest bidder at

the foreclosure sale.  The Quitclaim Deed conveying the Property to U.S. Bank in fee simple was then recorded.

Thus, U.S. Bank produced documents demonstrating that it owned the Property in fee simple as a result of the nonjudicial foreclosure sale.  In particular, the Mortgagee's Affidavit of Foreclosure was statutorily required to "set[] forth the mortgagee's acts in the premises fully and particularly."[15] Lee, 121 Hawaiʻi at 292, 218 P.3d at 780.  HRS § 667-8 (1993) provides that the certified copy of the Mortgagee's Affidavit of Foreclosure "shall be admitted as evidence that the power of sale was duly executed."[16]  "That the affidavit shall be admitted as evidence that the power of sale was duly executed demonstrates the legislature's intent to promote the finality of properly conducted sales."  Lee, 121 Hawaiʻi at 292, 218 P.3d at 780 (emphasis added).

---

[15]    HRS § 667-5(d) (Supp. 2011) provides that "[t]he mortgagee, within thirty days after selling the property in pursuance of the power, shall file a copy of the notice of sale and the mortgagee's affidavit, setting forth the mortgagee's acts in the premises fully and particularly, in the bureau of conveyances."  (Emphasis added).  The affidavit "may lawfully be made by any person duly authorized to act for the mortgagee, and in such capacity conducting the foreclosure."  HRS § 667-7 (Supp. 2011).

[16]    HRS § 667-8 (1993) provides,

If it appears by the affidavit that the affiant has in all respects complied with the requirements of the power of sale and the statute, in relation to all things to be done by the affiant before selling the property, and has sold the same in the manner required by the power, the affidavit, or a duly certified copy of the record thereof, shall be admitted as evidence that the power of sale was duly executed.

(Emphases added).

The Castros have not contested that Herminia defaulted on the loan and have not argued that U.S. Bank violated the statute governing the process for nonjudicial foreclosures.  See HRS § 667-5 (Supp. 2011).  Rather, the Castros' main contention involves the validity of Herminia's refinanced loan with New Century and the validity of the assignment of the Mortgage to U.S. Bank.  However, as noted, the Castros merely alluded to predatory lending and the process of selling and pooling loans generally throughout the country, rather than specifically alleging that U.S. Bank was not the holder of the Note and Mortgage or lacked title to the Property.  On the other hand, U.S. Bank produced all of the relevant documents demonstrating that it properly conducted the nonjudicial foreclosure sale.  Accordingly, the Castros failed to "demonstrate how postponement of a ruling on the motion [for summary judgment]" would have enabled them to "rebut [U.S. Bank's] showing of absence of a genuine issue of fact."  Acoba, 92 Hawaiʻi at 9-10, 986 P.2d at 296-97 (citing Josue v. Isuzu Motors Am., Inc., 87 Hawaiʻi 413, 416, 958 P.2d 535, 538 (1998)) (quotation marks omitted).  The district court did not abuse its discretion in denying the Castros' request for a continuance under HRCP Rule 56(f).

2.

The Castros also argued to the ICA that the district court erred in granting summary judgment due to "the insufficiency of the moving papers," "genuine issues of fact raised by the Castro declaration,"[17] and the denial of due process with respect to Herminia's sons, Steven and Christopher.

"We review a circuit court's award of summary judgment *de novo* under the same standard applied by the circuit court." Fujimoto v. Au, 95 Hawaiʻi 116, 136, 19 P.3d 699, 719 (2001) (citing Amfac, Inc. v. Waikiki Beachcomber Inv. Co., 74 Haw. 85, 104, 839 P.2d 10, 22 (1992)) (brackets omitted). "Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.'" Amfac, 74 Haw. at 104, 839 P.2d at 22 (citing Gossinger v. Ass'n of Apt. Owners of Regency of Ala Wai, 73 Haw. 412, 416, 835 P.2d 627, 630 (1992)).

First, the Castros argued that the district court erred in granting summary judgment because the only declaration submitted in support of the Motion for Summary Judgment was a declaration by U.S. Bank's counsel, which "purport[ed] to

_____

[17] The Castros cited Herminia's memorandum in opposition to the Motion for Summary Judgment, which did not include Herminia's declaration, but included counsel's declaration.

authenticate and verify facts and documents relative to this transaction."  The Castros argued that counsel's declaration was "deficient as a matter of law" because it failed to show that counsel was "competent to testify, and [did] not set forth admissible evidence based on personal knowledge."  However, U.S. Bank included a certified copy of the Mortgagee's Affidavit of Foreclosure with its Motion for Summary Judgment in accordance with HRS § 667-5(d).  The affidavit was self-authenticating under Hawaiʻi Rules of Evidence (HRE) Rule 902(4)[18] and admissible "as evidence that the power of sale was duly executed" pursuant to HRS § 667-8.  Additionally, U.S. Bank attached other documents establishing a direct chain of title from New Century to U.S. Bank in its Motion for Summary Judgment.  Thus the Castros have failed to demonstrate that the moving papers were insufficient.

Second, the Castros argued that U.S. Bank failed to carry its burden of proving that the Castros could not prevail as

---

[18] HRE Rule 902 (Supp. 2011) provides in relevant part:

Extrinsic evidence of authenticity as a condition precedent to admissibility is not required with respect to the following:

. . . .

(4) Certified copies of public records.  A copy of an official record or report or entry therein, or of a document authorized by law to be recorded or filed and actually recorded or filed in a public office, including data compilations in any form, certified as correct by the custodian or other person authorized to make the certification, by certificate complying paragraph (1), (2), or (3) or complying with any statute or rule prescribed by the supreme court.

to all affirmative defenses against summary judgment. However, "a plaintiff-movant is not required to disprove affirmative defenses asserted by a defendant in order to prevail on a motion for summary judgment." GECC Fin. Corp. v. Jaffarian, 80 Hawaiʻi 118, 119, 905 P.2d 624, 625 (1995) [hereinafter Jaffarian I]. The plaintiff is only obligated to disprove an affirmative defense on a motion for summary judgment when "the defense produces material in support of an affirmative defense."[19] GECC Fin. Corp. v. Jaffarian, 79 Hawaiʻi 516, 526, 904 P.2d 530, 540 (App. 1995) (Acoba, J., concurring). "Generally, the defendant has the burden of proof on all affirmative defenses, which includes the burden of proving facts which are essential to the asserted defense." Id. at 526 n.3, 904 P.2d at 540 n.3.

In this case, the only evidence produced by the Castros in support of their defense of lack of jurisdiction was Herminia's declaration. However, as noted, the declaration contained only vague, conclusory, and irrelevant allegations of misconduct in the underlying loan transaction and in the assignment of the Mortgage to U.S. Bank. The Castros therefore did not meet their burden of proving facts essential to their defense.

For the same reason, Herminia's declaration did not

---

[19]    The Jaffarian I court adopted the analysis of the ICA concurring opinion. 80 Hawaiʻi at 119, 905 P.2d at 625.

demonstrate the existence of genuine issues of material fact as to whether U.S. Bank was a real party in interest.  See HRCP Rule 56(e) ("an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits . . . must set forth specific facts showing that there is a genuine issue for trial").

Finally, the Castros argued to the ICA that Christopher and Steven were denied due process because the district court's order setting aside the entry of default was entered at the same time as the order granting summary judgment to U.S. Bank.  Thus, the Castros appeared to argue that Christopher and Steven were not afforded an adequate opportunity to contest the Motion for Summary Judgment.  This issue was not raised before the district court and the Castros submitted that it should be addressed as plain error.

> In civil cases, the plain error rule is only invoked when "justice so requires."  We have taken three factors into account in deciding whether our discretionary power to notice plain error ought to be exercised in civil cases: (1) whether consideration of the issue not raised at trial requires additional facts; (2) whether its resolution will affect the integrity of the trial court's findings of fact; and (3) whether the issue is of great public import.

Montalvo v. Lapez, 77 Hawaiʻi 282, 290, 884 P.2d 345, 353 (1994) (quoting State v. Fox, 70 Haw. 46, 56 n.2, 760 P.2d 670, 676 n.2 (1988)).

In this case, the record is factually undeveloped with respect to the due process claim.  See Montalvo, 77 Hawaiʻi at

290-91, 884 P.2d at 353-54 ("The first factor is based on the tenet that an appellate court should not review an issue based upon an undeveloped factual record."). The Castros did not include any transcripts of the district court proceedings in the record on appeal. The Castros also did not specify the manner in which Christopher and Steven were allegedly denied due process, other than claiming that they did not have the opportunity to contest the merits of summary judgment.

It is undisputed that the Castros received notice of the hearing on the Motion for Summary Judgment and were represented by counsel throughout the district court proceedings. The Castros conceded that "[c]learly, [Christopher and Steven] would have known of the pending summary judgment." Consequently, there is no indication in the record that Christopher and Steven were denied "notice and an opportunity to be heard at a meaningful time and in a meaningful manner." Bank of Haw. v. Kunimoto, 91 Hawaiʻi 372, 388, 984 P.2d 1198, 1214 (1999) (citing Korean Buddhist Dae Won Sa Temple of Haw. v. Sullivan, 87 Hawaiʻi 217, 243, 953 P.2d 1315, 1341 (1998)) (quotation marks omitted). Therefore, we decline to recognize plain error in this matter.

IV.

Based on the foregoing, we hold that the district court properly exercised subject matter jurisdiction over this case and granted summary judgment in favor of U.S. Bank.  The ICA's April 16, 2013 Judgment on Appeal is vacated and the district court's December 13, 2011 Judgment and Order are affirmed.

Charles R. Prather and
Sofia Hirosane McGuire,
for petitioner

Robin R. Horner,
for respondents

/s/ Mark E. Recktenwald

/s/ Paula A. Nakayama

/s/ Simeon R. Acoba, Jr.

/s/ Sabrina S. McKenna

/s/ Richard W. Pollack

