**Electronically Filed
Supreme Court
SCAP-19-0000450
17-SEP-2021
07:57 AM
Dkt. 105 OP**

IN THE SUPREME COURT OF THE STATE OF HAWAIʻI

---o0o---

STATE OF HAWAII ORGANIZATION OF POLICE OFFICERS,
exclusive representative for Bargaining Unit 12, Police,
Plaintiff-Appellant/Cross-Appellee,

vs.

CITY AND COUNTY OF HONOLULU,
Defendant/Cross-Claim Defendant-Appellee/Cross-Appellee,

and

HONOLULU CIVIL BEAT, INC.,
Intervenor-Defendant/Cross-Claimant-Appellee/Cross-Appellant.

SCAP-19-0000450

APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CAAP-19-0000450; CIV. NO. 18-1-0823-05)

SEPTEMBER 17, 2021

RECKTENWALD, C.J., NAKAYAMA, McKENNA, AND WILSON, JJ., AND
CIRCUIT JUDGE CAHILL, IN PLACE OF POLLACK, J., RECUSED

OPINION OF THE COURT BY RECKTENWALD, C.J.

## I.    INTRODUCTION

The Uniform Information Practices Act (UIPA) promotes

government transparency and accountability by requiring state

agencies to make their records available for public scrutiny. Hawaiʻi Revised Statutes (HRS) § 92F-2 (2012); HRS § 92F-11(a) (2012). However, "[t]he policy of conducting government business as openly as possible must be tempered by a recognition of the right of the people to privacy, as embodied in section 6 . . . of article I of the [Hawaiʻi Constitution.]" HRS § 92F-2. Accordingly, UIPA mandates disclosure of public records but furnishes an exception for "[g]overnment records which, if disclosed, would constitute a clearly unwarranted invasion of personal privacy[.]" HRS § 92F-13(1) (2012).

This case requires us to apply this exception to records about police misconduct. We have recognized a "compelling public interest in instances of police misconduct given the importance of public oversight of law enforcement." Peer News LLC v. City & Cty. of Honolulu, 138 Hawaiʻi 53, 74, 376 P.3d 1, 22 (2016). But under UIPA, the public's interest must be balanced against any countervailing privacy interests. HRS § 92F-14(a) (2012). Here, plaintiff State of Hawaii Organization of Police Officers (SHOPO) sued under UIPA to prevent the disclosure of certain police misconduct records, invoking the privacy exception. Preliminarily, we hold that there is no private cause of action to prevent, as opposed to compel, the release of public records under UIPA. The Circuit Court of the First Circuit (circuit court) correctly dismissed

2

SHOPO's UIPA claims for that reason.  It erred, however, by conflating the constitutional privacy right with the statutory privacy interests codified in UIPA; the core protections of the Hawaiʻi Constitution remain unaltered when the legislature chooses to extend greater protections than article I, section 6 requires.

Nonetheless, we hold that UIPA requires the release of the requested records.  This issue compels us to revisit two cases in which we have previously considered the required scope of disclosure of police misconduct records: State of Hawaiʻi Organization of Police Officers v. Society of Professional Journalists – University of Hawaiʻi (SHOPO v. SPJ), 83 Hawaiʻi 378, 927 P.2d 386 (1996), and Peer News.  While SHOPO v. SPJ made clear that police officers did not enjoy a constitutional privacy interest in their misconduct records, Peer News acknowledged that the legislature had recognized a significant privacy interest by statute.  Act 47, however, subsequently rescinded that recognition.  2020 Haw. Sess. Laws Act 47, § 1 at 364.  We apply Act 47 here, and to the extent the records fall within the categories enumerated by HRS § 92F-14(b)(4)(B)(i)-(v) (2012) (excepting certain kinds of misconduct information from the general privacy interest in a personnel file), SHOPO v. SPJ's holding applies – only a scintilla of public interest will compel disclosure, a threshold easily surpassed here.  To the

3

extent the records fall outside those categories, the balancing test prescribed by Peer News applies.  We agree with the circuit court that, applying the Peer News test, the public interest in disclosure outweighs the significant privacy interest at stake.  Moreover, SHOPO's challenges to the procedures employed by the circuit court and the City, and to the circuit court's application of the balancing test, are unconvincing.  We accordingly affirm the circuit court's judgment mandating the records' release.[1]

## II.  BACKGROUND

In September 2014, video from a restaurant's surveillance camera surfaced and was widely disseminated; the video appeared to show, and was widely reported as portraying, Honolulu Police Department (HPD) Sergeant Darren Cachola in a physical altercation with a woman.[2]  In the aftermath of the video, Sergeant Cachola was terminated from HPD.  But after arbitration, he was reinstated with back pay, and the disciplinary action was reduced to a suspension.

---

[1]     On December 16, 2020, we lifted the stay of the judgment, and the circuit court thereafter released the records.  We retained concurrent jurisdiction to issue this opinion.  See, e.g., In re AB, 145 Hawaiʻi 498, 513, 454 P.3d 439, 454 (2019).

[2]     The events giving rise to this litigation were widely publicized, and many of the news articles covering the video and its aftermath are in the record.  The complaint did not name Sergeant Cachola, and SHOPO has at times objected during this litigation to publicly naming the officer.  However, even before this court ordered the lifting of the stay of the circuit court's judgment, the record was replete with instances of his name.

4

On February 22, 2018, Civil Beat requested that the City release "the arbitration decision involving Darren Cachola" pursuant to UIPA. According to SHOPO's complaint, HPD notified SHOPO that it was considering releasing the records on April 12, 2018; on April 14, 2018, SHOPO wrote to the Chief and Deputy Chief of HPD to voice its "strenuous[] object[ion]" to the records' release. HPD officials subsequently informed SHOPO that "the public's interest in the subject records outweighed the privacy interest of [the] officers" and that it intended to release the records in redacted form.

## A.    Circuit Court Proceedings

### 1.    SHOPO's Complaint

SHOPO sued the City in the circuit court.[3]  The complaint requested declaratory and injunctive relief under the Hawai'i Constitution, UIPA, and the collective bargaining agreement (CBA) between SHOPO and the City.[4]  SHOPO alleged that the release of information related to an officer's suspension, including the arbitration decision which ordered his reinstatement, would violate the officer's right to privacy.

---

[3]    The Honorable Jeffrey P. Crabtree presided.

[4]    SHOPO also filed a class grievance under the CBA and a prohibited practice complaint with the Hawai'i Labor Relations Board (HLRB).  The record indicates that SHOPO obtained a temporary restraining order from the HLRB, blocking the release of the records pending a final decision in the instant case.

Specifically, SHOPO's complaint stated that both the "informational privacy" protection enshrined in article I, section 6 of the Hawaiʻi Constitution[5] and UIPA's statutory protections in HRS §§ 94F-13[6] and 92F-14(b)[7] precluded the City from releasing those records to the public.

SHOPO also challenged the lack of "written confirmation or explanation" about HPD's application of the Peer News balancing test and the basis for the City's conclusion that the public interest outweighed the privacy interest here. The City's "failure to provide a written explanation" regarding the balancing test "stripped SHOPO and its affected members with their right of appeal to the [Office of Information Practices

---

[5] Article I, section 6 provides: "The right of the people to privacy is recognized and shall not be infringed without the showing of a compelling state interest. The legislature shall take affirmative steps to implement this right."

[6] HRS § 92F-13 provides: "[UIPA] shall not require disclosure of . . . [g]overnment records which, if disclosed, would constitute a clearly unwarranted invasion of personal privacy[.]"

[7] HRS § 92F-14(a) provides: "Disclosure of a government record shall not constitute a clearly unwarranted invasion of personal privacy if the public interest in disclosure outweighs the privacy interest of the individual."
In turn, HRS § 92F-14(b) provides that "information in an agency's personnel file" is an "example[] of information in which the individual has a significant privacy interest." While "employment misconduct that results in an employee's suspension or discharge" is typically excluded from that example, and therefore disclosable, at the time this litigation commenced, misconduct by "a county police department officer" that did not "result[] in the discharge of the officer" was exempted from the exclusion. HRS § 92F-14(b)(4)(B) (2012). Thus, under HRS § 92F-14 as it existed when the complaint was filed, a county police officer has a significant privacy interest in their personnel file, even if the information therein pertains to misconduct, unless the officer was discharged. In September 2020, the legislature removed the "county police officer" exception from HRS § 92F-14. 2020 Haw. Sess. Laws Act 47, § 3 at 365-66.

6

(OIP)] or Circuit Court," citing HRS § 92F-42 (2012) ("The director of the [OIP] . . . [s]hall, upon request, review and rule on an . . . agency's granting of access[.]"). Further, SHOPO stated that the CBA between SHOPO and the City was violated by the attempt to release the records because the CBA – which is "consistent with the right to privacy under Hawaii's Constitution and the UIPA" - required the City to keep confidential all discipline and dismissal matters.

Accordingly, SHOPO requested: (1) "a declaration that Defendant City's decision to release the subject confidential and private information is a violation of the individual police officers' privacy rights and in violation of [UIPA]"; (2) "a declaration that Defendant City's failure to provide SHOPO and its members with information on how it reached its conclusion . . . stripped SHOPO and its affected members [of] their right of appeal to the OIP or Circuit Court" and likewise violated UIPA; (3) "a declaration of law that the right to privacy and the UIPA precludes and prohibits the release of any information regarding HPD officers who were the subject of discipline, unless those officers have exhausted all their administrative remedies and have been discharged due to disciplinary infractions"; and (4) "temporary, preliminary and permanent

7

injunctive relief to prevent and enjoin Defendant City from disclosing the requested information."[8]

## 2. August 13, 2018 Order

Civil Beat was allowed to intervene and moved to dismiss for lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted or, alternatively, for summary judgment (Motion). The City joined in the Motion. Civil Beat argued that SHOPO failed to state a claim for a constitutional violation because "police officers do not have a constitutional right of privacy against disclosure of disciplinary suspension records." Civil Beat further contended that UIPA furnished no private right of action to parties like SHOPO who "seek[] to withhold records from the public," and therefore, the court lacked subject matter jurisdiction. "The UIPA is not a confidentiality law that confers rights on any third party to conceal government information from public view," Civil Beat contended, but it argued that UIPA compelled the documents' release in any event.

SHOPO opposed the Motion, arguing that "police officers have a 'significant privacy interest' in their disciplinary suspension records," and those records "must be

_____

[8] The City's answer to the complaint largely admitted the factual allegations, but claimed it did not violate UIPA and that SHOPO was not entitled to information about how the City reached its conclusion.

kept private unless the public's interest in disclosure outweighs the privacy interest of the individual police officer."  SHOPO contended it was permitted to enforce UIPA because it had standing to do so.  It also disagreed with the contention that UIPA is not a confidentiality law; as a result, SHOPO argued it could bring this suit because a purpose of UIPA is to assure open access in balance with individual privacy rights.

The circuit court granted the Motion "to the extent [SHOPO]'s claim is based on a violation of the [UIPA]" and denied the Motion in all other respects (August 13, 2018 Order). In the August 13, 2018 Order, the court concluded that "[SHOPO] has no private cause of action for disclosure of government records under the UIPA."  However, the circuit court "f[ound] SHOPO has a cause of action and standing to assert the constitutional privacy claim."  It ordered the City to produce the documents for in camera review.

### 3.    September 28, 2018 Order

SHOPO moved to "clarify, modify, or correct" the August 13, 2018 Order (Motion to Clarify).  It argued clarification, modification, or correction was necessary for four reasons: (1) SHOPO "sought declaratory relief pursuant to HRS § 632-1 [(2016)], and injunctive relief to enjoin Defendant City from releasing the subject records" until it performs the

9

balancing test, not "a private cause of action under UIPA"; (2) because its requested relief included a declaration of the City's UIPA obligations, "[i]t is not clear what is left of Plaintiff's Complaint . . . because UIPA is the mechanism intended to protect the right to privacy which SHOPO's Complaint seeks to enforce"; (3) dismissal of all UIPA claims and ordering in camera review contradicted each other; and (4) "[i]t is unclear if Plaintiff will be given the opportunity to conduct discovery" and what information the court would consider. The City and Civil Beat opposed the motion.

The circuit court issued an Order (September 28, 2018 Order) clarifying that it would "apply a constitutional balancing test as discussed in Peer News." It saw "no inconsistency between a constitutional balancing test and its finding of no private cause of action under UIPA" per the August 13, 2018 Order. "The Hawaiʻi Constitution sets a floor for privacy interests. The Legislature can establish more protections by statute (such as UIPA) if it chooses to. . . . This court has now ruled that the legislative protections of UIPA do not apply to Plaintiff under the circumstances of this case." The circuit court stated that after in camera review, it would decide "whether any applicable constitutional privacy protections are outweighed by the public interest in disclosure under the applicable facts."

10

### 4. Civil Beat's Cross-Claim

Civil Beat moved for, and was granted, permission to file a cross-claim against the City as a requester "aggrieved by a denial of access to a government record" per HRS § 92F-15 (2012). Civil Beat asserted in the motion that "it appears that SHOPO is abandoning its constitutional privacy claims," in which case, the circuit court may have been compelled to dismiss the case in its entirety.

Civil Beat's cross-claim against the City alleged that the City denied their renewed UIPA request as a result of the HLRB's order enjoining the release of the requested records.[9] See supra note 3. Thus, Civil Beat asked for the court to order the City to release "all information sought" by Civil Beat in its UIPA request – namely, the arbitration award, the closing report, and the full investigation. The City's answer to the cross-claim denied that it had violated UIPA, but admitted that "Civil Beat has a right to access the requested records" and that "it has been and remains the City's intention to disclose the requested records."

### 5. January 3, 2019 Order

The circuit court sua sponte reexamined and vacated part of the September 28, 2018 Order (January 3, 2019 Order).

---

[9] The cross-claim alleges that Civil Beat issued another request for the records on August 30, 2018 (while the instant litigation was well underway), which was denied by the City on the grounds of the HLRB order.

11

It recognized that while its prior rulings constituted the law of the case, "so long as a trial court retains jurisdiction, it 'always has the power to reexamine, modify, vacate, correct and reverse its prior rulings and orders,'" especially when it feels a prior ruling was "probably erroneous."  (Quoting Chun v. Board of Trustees of the Emp. Ret. Sys., 92 Hawaiʻi 432, 441, 992 P.2d 127, 136 (2000).)  The circuit court reasoned that the September 28, 2018 Order had conflated the question of whether SHOPO had a statutory cause of action under UIPA with whether UIPA's substantive, statutory privacy protections apply.  "[T]he court now recognizes that the UIPA cause of action issue is separate from and does not nullify the legislature's ability to create or enlarge statutory privacy exceptions to the UIPA's broad disclosure requirements."  It determined that

> the statutory privacy interests granted by the legislature under the UIPA should be applied by this court whether or not the City/HPD chooses to disclose the information or records at issue.  Otherwise, an individual's statutory privacy interests under the UIPA are ephemeral, and evaporate whenever the agency chooses to disclose, with no relief available from the court.

The circuit court reasoned this approach was more consistent "with the underlying purposes of the UIPA, which include making the 'government accountable to individuals in the collection, use, and dissemination of information relating to them.'"  (Citing HRS § 92F-2(4).)

12

## 6.  April 29, 2019 Order

On April 29, 2019, the circuit court issued an order after in camera review of the records (April 29, 2019 Order). The April 29, 2019 Order granted summary judgment against SHOPO and in favor of the City and Civil Beat as to the arbitration decision and closing report.  It dismissed without prejudice all claims regarding the investigative report, and dismissed all other claims.  The court ruled as follows:

> 1. The Court was asked to review three documents in camera: the arbitration award, the closing report, which is 143 pages, and the investigative report, which is 767 pages.
>
> 2. The more serious the misconduct, the more likely the public interest outweighs the individual privacy interest.  Here, the alleged misconduct was extremely serious: the use of unauthorized, unjustified, and potentially criminal physical force against another person, completely unrelated to any official law enforcement duties.
>
> 3. The proper performance of public duty is a public concern, and it is given great weight when balancing competing privacy interests.  This is true whether addressing off-duty acts that bear upon a police officer's fitness to perform duties, or whether the alleged actions involve official duties.  Here, the alleged acts are essentially personal and off-duty, but clearly can bear upon a police officer's fitness to perform duties.
>
> 4. There is a significant public interest in the public knowing how the Honolulu Police Department (HPD) supervises alleged misconduct, responds to misconduct allegations, and investigates alleged misconduct.  A large portion of the records reviewed in camera (which the City/HPD themselves decided to release) involve HPD's investigation and response to the misconduct allegations.
>
> 5. Little of the conduct described in these records was of a truly personal, private, or intimate nature.  Much of the alleged conduct occurred in front of witnesses, in a restaurant, or in the public areas, and with third parties.
>
> 6. For the above reasons, the Court finds that as a matter of law, the public interest in disclosure far outweighs the privacy interests of the records directed to

13

be released in this order.  Put another way, consistent with the UIPA's general policy in favor of disclosure, the City/HPD's disclosure of these records is not clearly unwarranted.

7. Further, there is a separate and independent ground to release the arbitration award - the requirement to disclose adjudicative orders pursuant to HRS § 92F-12(a)(2) [(2012)].

8. Although the arbitration award, as the final adjudication award, is a mandatory disclosure under section 92F-12(a)(2), it is still subject to privacy interests per section 92F-13(1).

9. Disclosing the redacted portions of the arbitration award, to include the City/HPD's proposed redactions as well as any additional redactions necessary to protect "personal information" as defined by Hawaii Court Records Rules (HCRR) Rule 2.19,[10] is clearly unwarranted when weighed against the privacy interests of the civilians involved.

10. The closing report is not a criminal investigation file.  It is a disciplinary action file.  The Court understands the HPD and the City have voluntarily decided to release the closing report, with certain redactions.  This Court is tasked with ruling on the privacy issues presented by the release of the proposed redacted closing report.

11. In essence, the closing report contains more details than the arbitration award concerning the events and investigation that led to the officer's termination and subsequent reinstatement.  In addition to the information redacted in the arbitration award, the closing report redacts the names of various witnesses, and responding and/or investigating officers.  Although these identities are redacted, the person's actions and inactions are disclosed.  In other words, with the redacted version, the reader will learn in detail what happened, and will see in detail how the investigation was conducted, but may not learn exactly which witness or exactly which responding or investigating officer did something specific.

12. The Court finds that the HPD/City's disclosure of the proposed redacted closing report is not clearly unwarranted.  HPD is plainly trying to be transparent regarding the disciplinary investigation of the officer who was discharged and then reinstated, while balancing the privacy interests of everyone else involved.  It is a fine

---

[10]     Hawai'i Court Records Rule (HCCR) Rule 2.19 defines "personal information."  HCCR Rule 9 generally prohibits the inclusion of personal information in publicly accessible court filings.

14

line, and time-consuming, to weigh these issues page by page.

13. The bottom line is the Court finds the disclosure and redactions are legally justified. The public's right to know under the UIPA is satisfied by learning the details regarding the discharged/reinstated officer, as well as the details of what the investigation revealed and how the investigation was conducted. At the same time, the privacy of certain civilian witnesses, and certain information regarding the responding and investigating officers, is redacted. The Court does not believe the redactions materially detract from the voluminous information being disclosed by HPD/City. The public's right to know should be met by seeing both the final adjudicative decision, and HPD's response to the entire incident.

14. The Court respectfully disagrees with SHOPO's claim or inference that the City did not conduct any kind of balancing analysis and that therefore this Court is in essence conducting the first balancing test for these records. The Court sees no evidence in the record to support this claim. Just because the agency is not required to give a plaintiff a written/reasoned explanation for disclosure does not mean no balancing test was performed.

15. For the above reasons, the Court hereby orders release of the redacted arbitration award, subject to additional redactions wherever necessary to protect "personal information" as defined by HCRR Rule 2.19.

16. The Court further orders the release of the redacted version of the closing report[.[11]]

The court also noted that it had only received the unredacted version of the 767-page investigative report; it understood the City to be working on redactions, but it declined to make those decisions itself. It also "doubt[ed] that the full investigative file adds much to the discussion" as it was duplicative of the arbitration award and closing report; it accordingly did not order the disclosure of the report (except for 72 pages containing "HPD's policies, procedures and rules

_____

[11] The court also ordered further redactions to the closing report.

15

applicable to the incident in question" that did not require redaction).  Claims related to the investigative report were dismissed without prejudice.

SHOPO moved for, and the circuit court granted, a stay of the judgment pending appeal.[12]

**B.    Proceedings on Appeal**

SHOPO and Civil Beat cross-appealed.  At issue on appeal are the August 13, 2018 Order; the September 28, 2018 Order; the January 3, 2019 Order; and the April 29, 2019 Order.

SHOPO's appeal raises the following points of error. First, it contends that the circuit court erred by failing to address its request for declaratory relief (a declaration of "Defendant City's duties and responsibilities under the UIPA" and "guidance on how an agency must apply the UIPA balancing test") and injunctive relief ("prohibiting Defendant City [from] releasing the subject records until such time that it has complied with UIPA").

In the alternative, SHOPO argues that the circuit court failed to properly interpret and apply the UIPA balancing

---

[12]    Civil Beat petitioned this court for a writ of mandamus, alleging that the circuit court failed to apply the proper test for a stay pending appeal.  See Honolulu Civil Beat Inc. v. Crabtree, SCPW-19-0000622, 2019 WL 4678149 (Haw. Sept. 25, 2019) (Order Denying Petition for Writ of Mandamus). We denied the petition.  After this court accepted Civil Beat's application for transfer, Civil Beat moved to lift the stay pursuant to Hawaiʻi Rules of Appellate Procedure (HRAP) Rule 8(a).  We initially denied the motion on January 24, 2020.  As explained below, however, we later lifted the stay upon Civil Beat's renewed request.

test as set forth in Peer News. It specifically challenges the City and the circuit court's application of the balancing test and the procedural integrity of the process, arguing: it was denied due process; the circuit court should have addressed the CBA, including the arbitrator's decision to seal the arbitration decision pursuant to the CBA; the circuit court erred by conducting the balancing test de novo, as opposed to "the 'highly factual' standard"; the circuit court erroneously limited its in camera review because it was too "time consuming"; the circuit court's "separate and independent ground[s]" for releasing the records under HRS § 92F-12(a)(2) was erroneous; the circuit court erroneously concluded the City was not required to issue a written explanation justifying disclosure; and the circuit court should have "prohibit[ed] the disclosure of the full investigative report."

Civil Beat's appeal challenges the circuit court's January 3, 2019 Order, which applied UIPA privacy standards despite reaffirming that SHOPO lacked a cause of action: "The circuit court's recognition of an unspecified and amorphous implied cause of action based on the mere existence of the UIPA privacy standards directly contradicts the analysis for judicially implying a private right of action from a statute." It also asks this court to review "[w]hether the constitutional

17

right of privacy standards are the same as the UIPA privacy standards."

This court accepted transfer of the appeals on October 24, 2019. While the appeals were pending, Act 47 became law. Act 47 amended, as relevant here, HRS § 92F-14 to remove the statutory "significant privacy interest" in the employment misconduct records of a county police officer.[13] The parties

---

[13] More precisely, it removed the exception for county police officers from the exception for disciplinary records from the "personnel file" example on the list of examples of "information in which the individual has a significant privacy interest." Act 47 amended HRS § 92F-14 as follows (deleted text represented by strikethrough):

> (b) The following are examples of information in which the individual has a significant privacy interest:
>
> . . . .
>
> > (4) Information in an agency's personnel file, . . . except:
> >
> > . . . .
> >
> > > (B) The following information related to employment misconduct that results in an employee's suspension or discharge:
> > >
> > > > (i) The name of the employee;
> > > > (ii) The nature of the employment related misconduct;
> > > > (iii) The agency's summary of the allegations of misconduct;
> > > > (iv) Findings of fact and conclusions of law; and
> > > > (v) The disciplinary action taken by the agency;
> > >
> > > when the following has occurred: the highest nonjudicial grievance adjustment procedure timely invoked by the employee or the employee's representative has concluded; a written decision sustaining the suspension or discharge has been issued after this procedure; and thirty calendar days have elapsed following the issuance of the decision or, for decisions involving county police department

18

requested, and we granted, the opportunity for supplemental briefing that addressed how Act 47 affected the instant case.

On December 16, 2020, after supplemental briefing and oral argument, we granted Civil Beat's request to lift the stay of the judgment. We explained that "[i]t is clear to us that UIPA mandates the disclosure of the documents at issue," and "[w]e accordingly s[aw] no reason for further delay in effectuating the circuit court's order[.]" State of Hawaiʻi Organization of Police Officers v. City and County of Honolulu, SCAP-19-0000450 (Haw. Dec. 16, 2020) (Order Lifting Stay Pending Appeal). As a result, the redacted arbitration award and closing report were released. We retained jurisdiction to issue this opinion, and we now elaborate on our reasons for concluding that the records were subject to disclosure.

### III. STANDARD OF REVIEW

> On appeal, an order of summary judgment is reviewed under the same standard applied by the circuit courts. Summary judgment is proper where the moving party demonstrates that there are no genuine issues of material fact and it is entitled to judgment as a matter of law. In other words, summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law.

SHOPO v. SPJ, 83 Hawaiʻi at 389, 927 P.2d at 397.

---

officers, nine_ty days have elapsed following the issuance of the decision; [provided that subparagraph (B) shall not apply to a county police department officer except in a case which results in the discharge of the officer;]

2020 Haw. Sess. Laws Act 47, § 3 at 365-66.

19

Whether a document is subject to disclosure under UIPA is reviewed de novo, HRS § 92F-15(b), as are "constitutional questions." Doe v. Doe, 116 Hawaiʻi 323, 326, 172 P.3d 1067, 1070 (2007).

## IV. DISCUSSION

UIPA requires disclosure of public records unless an exception applies; one of those exceptions lies where disclosure would constitute "a clearly unwarranted invasion of personal privacy." HRS § 92F-13. In turn, HRS § 92F-14(a) provides that "[d]isclosure of a government record shall not constitute a clearly unwarranted invasion of personal privacy if the public interest in disclosure outweighs the privacy interest of the individual." HRS § 92F-14(b) supplies a list of examples of information in which an individual has a "significant privacy interest." One of those examples is "[i]nformation in an agency's personnel file." HRS § 92F-14(b)(4). This interest in one's personnel file, however, is subject to an important exception: particular information related to employee misconduct resulting in suspension or discharge does not enjoy a significant privacy interest. HRS § 92F-14(b)(4)(B).

Two cases interpreting these statutes are critical here. First, in SHOPO v. SPJ, we held that "information regarding a police officer's misconduct in the course of his or

20

her duties as a police officer is not within the protection of Hawaiʻi's constitutional right to privacy." 83 Hawaiʻi at 397, 927 P.2d at 405. Absent a significant privacy interest rooted in statute or the constitution, "a scintilla of public interest in disclosure will preclude a finding of a clearly unwarranted invasion of personal privacy." Id. at 383-84, 927 P.2d at 391-92 (quoting Conf. Comm. Rep. No. 112-88, in 1988 House Journal, at 817-18). Said differently, under SHOPO v. SPJ, records in which there is no significant privacy interest – which, at the time SHOPO v. SPJ was decided, was true of police misconduct records – must be released under UIPA if there is at least a scintilla of public interest in disclosure.

Second, in Peer News, we recognized that the legislature had amended UIPA to carve out police misconduct records from the employment misconduct records in which an employee generally enjoys no right to privacy. Said plainly, the legislature "recognized a 'significant privacy interest' in police officers' disciplinary suspension records in HRS § 92F-14(b)." 138 Hawaiʻi at 61, 376 P.3d at 9. Accordingly, Peer News held that determining whether police misconduct records are subject to disclosure under UIPA requires "balancing that [significant] privacy interest against the public interest in disclosure of the records." Id. at 73, 376 P.3d at 21.

21

Accordingly, the following scheme applies when UIPA's privacy exception is invoked:

> The application of section 92F-14 varies considerably depending on whether or not the privacy interest is considered "significant." [SHOPO v. SPJ, 83 Hawai'i] at 383-84, 927 P.2d at 391-92. "[O]nce a significant privacy interest is found, the privacy interest will be balanced against the public interest in disclosure. If the privacy interest is not 'significant,' a scintilla of public interest in disclosure will preclude a finding of a clearly unwarranted invasion of personal privacy." Id. (quoting Conf. Comm. Rep. No. 112-88, in 1988 House Journal, at 817-18).

Id. at 76, 376 P.3d at 24 (Pollack, J., concurring).

This case requires us to consider how UIPA, as interpreted by SHOPO v. SPJ and Peer News, applies to the sought records in this case: the redacted arbitration award and closing report.[14] It also requires us to determine whether and how Act 47 changes the analysis insofar as the legislature has now rescinded its recognition of a "significant privacy interest" in police misconduct records. But first, as a threshold matter, we must consider whether SHOPO had the right to bring this suit at all.

## A. There Is No Private Right of Action Under UIPA for a Party to Sue to Prevent the Release of Records that an Agency Has Determined Are Subject to Disclosure

SHOPO's complaint challenges the City's decision to release documents pursuant to UIPA, seeking both declaratory and

---

[14] Civil Beat has not appealed the circuit court's decision not to order the release of the investigative report. This opinion accordingly does not address whether UIPA requires the disclosure of that record. However, we do address SHOPO's contention that the circuit court should have prohibited the disclosure of the investigative report in Part IV.J below.

22

injunctive relief.  To do so, however, SHOPO must have a right of action.  We hold that there is no private right of action under UIPA for a party seeking to prevent the release of documents.

As a preliminary matter, SHOPO argues that HRS § 632-1, which provides for declaratory relief in certain circumstances, itself creates a right of action.[15]  It does not. An express or implied right of action must sound from some other law before a party may rely on HRS § 632-1's remedies.  In Alaka'i Na Keiki, Inc. v. Matayoshi, 127 Hawai'i 263, 277 P.3d 988 (2012), the plaintiff – a business that had submitted a proposal to the State to provide health and human services – sought a declaratory judgment that the State had violated HRS Chapter 103F, which establishes rules for health-related procurements by the State.  Id. at 266-67, 277 P.3d at 991-92. Although the plaintiff sought declaratory relief, we explained,

---

[15]     SHOPO also argues that "Civil Beat's [right of action] argument here fails because it ignores . . . [SHOPO's] clear standing to assert such claims."  That SHOPO would have standing to seek declaratory relief under Tax Foundation of Hawai'i v. State, 144 Hawai'i 175, 439 P.3d 127 (2019), is of no matter if it lacks a cause of action.  As we explained in County of Hawai'i v. Ala Loop Homeowners, 123 Hawai'i 391, 235 P.3d 1103 (2010):

> [O]ur cases make clear that the two inquiries [standing and private right of action] involve distinct policy considerations and distinct tests.  The private right of action inquiry focuses on the question of whether any private party can sue to enforce a statute, while the standing inquiry focuses on whether a particular private party is an appropriate plaintiff.

Id. at 406 n.20, 235 P.3d at 1118 n.20 (citations omitted).

23

"In order for a party to sue for enforcement under HRS § 632-1, HRS chapter 103F must provide for an express or implied private right of action."  Id. at 285, 277 P.3d at 1010.  Thus, the declaratory judgment statute provides a remedy but does not furnish a cause of action; the substantive law the plaintiff seeks to enforce by way of a declaratory judgment must itself do so.

In order to enforce UIPA, SHOPO's cause of action must emanate from UIPA itself, the substantive law it seeks to enforce.  First, no express cause of action to prevent disclosure of government records exists under UIPA.  UIPA provides an express cause of action for a specific class of people: those aggrieved by nondisclosure.[16]  HRS § 92F-15(a) provides: "[a] person aggrieved by a denial of access to a government record may bring an action against the agency at any time within two years after the agency denial to compel disclosure."  (Emphases added.)  Thus, UIPA provides for

---

[16]     Under federal law, some parties may sue to prevent the release of certain documents pursuant to the Freedom of Information Act (FOIA).  CNA Fin. Corp. v. Donovan, 830 F.2d 1132, 1133 n.1 (D.C. Cir. 1987).  While FOIA and related statutes furnish the substantive law in so-called "reverse-FOIA" lawsuits, "§ 10(a) of the Administrative Procedure Act (APA), 5 U.S.C. § 702 (1982), supplies the cause of action."  Id. (citing Chrysler Corp. v. Brown, 441 U.S. 281, 317, 317 n.47 (1979)).  Section 10(a) of the APA provides in relevant part: "A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof."  No party has argued that the judicial review provisions of Chapter 91, Hawai'i's equivalent to the APA, provides a cause of action, and Chapter 91 is meaningfully different from the APA in any event.

24

judicial enforcement by a requester who tried, but failed, to acquire government documents.  SHOPO is not "a person aggrieved by a denial of access"; SHOPO is aggrieved by the agency's grant of access.  Moreover, SHOPO is not seeking to "compel disclosure" – quite the opposite.  Accordingly, SHOPO is not entitled to invoke Chapter 92F's judicial enforcement mechanism, and UIPA furnishes no other express cause of action to sustain SHOPO's suit.

Thus, if a right of action to prevent disclosure exists under Chapter 92F, it must be implied.  To determine whether a statute confers an implied private right of action, this court has adopted the United States Supreme Court's analysis in Cort v. Ash, 422 U.S. 66 (1975).  See, e.g., Reliable Collection Agency, Ltd. v. Cole, 59 Haw. 503, 506–07, 584 P.2d 107, 109 (1978); County of Hawaiʻi v. Ala Loop Homeowners, 123 Hawaiʻi 391, 407-08, 235 P.3d 1103, 1119-20 (2010), abrogated on other grounds by Tax Found. of Hawaiʻi v. State, 144 Hawaiʻi 175, 439 P.3d 127 (2019); Hungate v. Law Office of David B. Rosen, 139 Hawaiʻi 394, 406, 391 P.3d 1, 13 (2017).  Cort set forth "several factors" to determine "whether a private remedy is implicit in a statute not expressly providing one":

> First, is the plaintiff 'one of the class for whose especial benefit the statute was enacted[]' . . . ?
> Second, is there any indication of legislative intent,

25

explicit or implicit, either to create such a remedy or to deny one? . . . Third, is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff?

422 U.S. at 78 (citations omitted).[17]

In the intervening years, the United States Supreme Court has refined the inquiry to emphasize legislative intent. See Gonzaga Univ. v. Doe, 536 U.S. 273, 283-84 (2002); Alexander v. Sandoval, 532 U.S. 275, 286 (2001). This court has followed suit. In Rees v. Carlisle, 113 Hawaiʻi 446, 153 P.3d 1131, (2007), we explained that "we apply Cort's first three factors in determining whether a statute provides a private right of action though understanding that legislative intent appears to be the determinative factor." Id. at 458, 153 P.3d at 1143 (quoting Whitey's Boat Cruises, Inc. v. Napali-Kauai Boat Charters, Inc., 110 Hawaiʻi 302, 313 n.20, 132 P.3d 1213, 1224 n.20 (2006)).

Based on this test, there is no implied cause of action under UIPA for SHOPO to sue to prevent the release of records. Recognizing that UIPA grants county police officers a privacy interest in their personnel files, SHOPO, via its members, is arguably "a member of the class for whose special benefit the statute was enacted" (albeit this contention might

_____

[17] The fourth factor in the Cort test is inapplicable here for obvious reasons: "And finally, is the cause of action one traditionally relegated to state law, in an area basically the concern of the States, so that it would be inappropriate to infer a cause of action based solely on federal law?" 422 U.S. at 78.

26

reasonably be called into doubt in light of Act 47).  Hungate, 139 Hawaiʻi at 406, 391 P.3d at 13.  But neither legislative intent nor the underlying purposes of the legislative scheme indicate that a party in SHOPO's position is able to sue to prevent the disclosure of public records.  UIPA simply provides no right of nondisclosure.

Legislative intent is given the greatest weight.  In this case, there is a clear and obvious indicator of legislative intent: UIPA already provides for particular kinds of enforcement actions.  "A frequently stated principle of statutory construction is that when legislation expressly provides a particular remedy or remedies, courts should not expand the coverage of the statute to subsume other remedies."  Reliable Collection Agency, 59 Haw. at 510, 584 P.2d at 111 (quoting Nat'l R.R. Passenger Corp. v. Nat'l Ass'n of R.R. Passengers, 414 U.S. 453, 458 (1974)).  The legislature chose to provide for judicial review and was quite specific that review is available when a party is aggrieved by an agency's denial of access.  HRS § 92F-15; see Whitey's Boat Cruises, 110 Hawaiʻi at 314, 132 P.3d at 1225 (reasoning that the existence of enumerated civil penalties weighed against implying a private right of action); cf. Travelers Ins. Co. v. Hawaii Roofing, Inc., 64 Haw. 380, 387, 641 P.2d 1333, 1338 (1982) (disallowing a lawsuit where suing appeared to be an "attempt at

27

circumvention of statutory dictates"). And UIPA elsewhere penalizes wrongful disclosure, as HRS § 92F-17(a) (2012) makes it a misdemeanor to "intentionally disclose[] or provide[] a copy of a government record, or any confidential information explicitly described by specific confidentiality statutes, to any person or agency with actual knowledge that disclosure is prohibited[.]" See Rees, 113 Hawaiʻi at 458-59, 153 P.3d at 1143-44 (concluding that private enforcement would be inconsistent with an ordinance when the law explicitly provided for public enforcement); cf. Molfino v. Yuen, 134 Hawaiʻi 181, 187, 339 P.3d 679, 685 (2014) (declining to impose tort liability under Chapter 92F because the fact that it "expressly imposes criminal penalties for intentional violations of confidentiality statutes" reflected countervailing legislative intent).

The legislative scheme also points against implying a cause of action for SHOPO to sue to prevent disclosure because UIPA itself creates no right of nondisclosure. SHOPO does not accurately characterize the law when it says that documents are "protected from disclosure" unless the public interest outweighs the privacy interest. In fact, HRS § 92F-13(1) provides that "[UIPA] shall not require disclosure of," inter alia, "records which, if disclosed, would constitute a clearly unwarranted invasion of personal privacy[.]" (Emphasis added.) "The plain

28

language of a statute is 'the fundamental starting point of statutory interpretation[.]'" State v. Demello, 136 Hawaiʻi 193, 195, 361 P.3d 420, 422 (2015) (citation omitted). The statutory language here is not prohibitive: that is, HRS § 92F-13 does "not require disclosure" if an exemption applies, but it does not forbid it, either. The statute does not, for instance, say that such records "shall not be disclosed," language used in other statutes.[18] Indeed, UIPA itself uses more restrictive and unequivocal language prohibiting disclosure in other places within the statutory scheme: under HRS § 92F-19(a) (2012), "[n]o agency may disclose or authorize disclosure of government records to any other agency," unless a defined exception applies. And the fourth exemption in HRS § 92F-13 provides that an agency need not release "[g]overnment records which, pursuant to state or federal law including an order of any state or federal court, are protected from disclosure[.]" HRS § 92F-13(4) (emphasis added). This provision recognizes that, unlike documents that are exempt from disclosure per HRS § 92F-13(1), (2), (3), and (5), some records are affirmatively "protected from disclosure" by state or federal law, and an agency does not

---

[18] See, e.g., HRS § 37-77.5(b) (2009) (attorney general's report about claims against the State "shall not be disclosed pursuant to sections 92F-13 and 92F-19(b)"); HRS § 334-5 (Supp. 2014) (records maintained by health care providers "shall not be disclosed by any person"); HRS § 333F-8.7 (Supp. 2014) (records identifying a person who received services because of a developmental disability "shall not be disclosed by any person"); HRS § 612-13 (2016) (names of jurors "shall not be disclosed").

29

violate UIPA, which would otherwise mandate disclosure, by abiding by a countervailing directive.  Reading the statute in pari materia, that the legislature could have, but did not, phrase HRS § 92F-13 to prohibit disclosure or protect from disclosure (rather than "not require disclosure") suggests that the difference was purposeful, and "this court must presume that the legislature meant what it said[.]"  Demello, 136 Hawaiʻi at 195, 361 P.3d at 422.

Civil Beat also points out that the Fair Information Practice law once codified in Chapter 92E, which was repealed and replaced with UIPA in the late 1980s, used to expressly prohibit agency disclosure of "personal record[s]."  HRS § 92E-4 (1985).  The same chapter also provided that "[a]n individual may bring a civil [action] against an agency in a circuit court of the State whenever an agency fails to comply with any provision of this chapter[.]"  HRS § 92E-11(a) (1985) (emphasis added).  That these provisions were repealed and replaced by a statutory scheme with no analogues suggests that the legislature acted purposefully when it passed UIPA, both by limiting the scope of judicial review and by making the exceptions to disclosure discretionary.

This conclusion also comports with the OIP's understanding of UIPA, and OIP opinions "shall be considered as precedent" unless "palpably erroneous" under HRS § 92F-15(b).

30

When a requested record falls into one of these exceptions [under HRS § 92F-13], an agency is not required to disclose it, but an agency is not forbidden from waiving the exception and disclosing the record, unless exception [HRS § 92F-13(4)] applies and the record is protected by a statute or court order.

OIP Op. Ltr. No. 99-04, at 2 (Oct. 15, 1999); see also OIP Op. Ltr. No. 05-03, at 1 (Jan. 19, 2005) ("While the UIPA confers on an agency the discretion to withhold certain types of records (or certain types of information contained in records), it does not require an agency to deny access to those records."); OIP Op. Ltr. No. 05-18, at 3 (Dec. 9, 2005) ("[G]enerally, the UIPA is a discretionary statute and does not require an agency to withhold a record."); OIP Op. Ltr. No. 06-04, at 4 (June 14, 2006) ("If disclosure 'would constitute a clearly unwarranted invasion of personal privacy' of that third party, it is our opinion that the agency may, and generally should, exercise its discretion to withhold that personal information under section 92F-13(1)." (emphases added)); OIP Op. Ltr. No. 07-11, at 1 n.3 (Sept. 25, 2007) ("OIP notes that the UIPA is not a 'confidentiality statute' that requires an agency to withhold records. Rather, the UIPA allows an agency to withhold those records (or information contained in those records) if an exception to disclosure provided by statute applies. An agency, therefore, has the discretion to publicly disclose records that could otherwise be withheld under the UIPA.").

31

Peer News is not to the contrary. In Peer News, Civil

Beat had requested information regarding instances of misconduct

from HPD and was denied. 138 Hawaiʻi at 55-57, 376 P.3d at 3-5.

The procedural posture of Peer News, then, only gave us the

opportunity to review when it is appropriate for the circuit

court to order disclosure in a UIPA lawsuit brought by an

aggrieved requestor; we did not have the occasion to consider

when, if ever, the circuit court should enjoin disclosure, nor

did we opine as to when disclosure by the agency is merely

discretionary or prohibited outright. In other words, our

statement that "[d]isclosure of records is appropriate only when

the public interest in access to the records outweighs [an

officer's] privacy interest," id. at 55, 376 P.3d at 3, referred

to court-mandated disclosure.

Accordingly, there are three classes of documents

under UIPA: (1) documents that must be disclosed, (2) documents

that may be disclosed, and (3) documents that may not be

disclosed.[19] Parties denied access to a record (as the Peer News

---

[19] The same is true under FOIA. FOIA's exemption provision is also phrased permissively: "This section does not apply to matters that are [one of nine defined exemptions.]" 5 U.S.C. § 552(b). "Subsection (b), 5 U.S.C. § 552(b), which lists the exemptions, simply states that the specified material is not subject to the disclosure obligations set out in subsection (a). By its terms, subsection (b) demarcates the agency's obligation to disclose; it does not foreclose disclosure." Chrysler Corp., 441 U.S. at 292. Accordingly, FOIA "does not afford [plaintiffs] any right to enjoin agency disclosure." Id. at 294. The success of reverse-FOIA cases brought under the APA often depends on whether another law – in Chrysler Corp., for example, the Trade Secrets Act – independently prohibits disclosure, such

plaintiffs were) may sue using the judicial review provision, HRS § 92F-15, and the circuit court should order disclosure if the sought information falls under category (1). Parties seeking to enjoin the release of information protected by the constitution (or another confidentiality statute if that statute provides a cause of action) may sue to prevent disclosure for documents under category (3), and criminal penalties likewise provide a remedy for wrongful disclosure of category (3) documents. But it would be inconsistent with the legislative scheme to allow suits to prevent disclosure of documents under category (2) – such as those that, as SHOPO alleges here, are exempted from disclosure under HRS § 92F-13(1) – because the statute gives agencies discretion to disclose notwithstanding the exception.[20]

In sum, taking the Cort factors together, SHOPO has no right of action to sue to demand nondisclosure. Not only does UIPA already provide an express cause of action for particular groups, nondisclosure is only mandatory under UIPA where another law – for instance, a state or federal statute, the

_____

that the disclosure is "not in accordance with law" under § 10 of the APA. Id. at 318; Canadian Com. Corp. v. Dep't of Air Force, 514 F.3d 37, 39 (D.C. Cir. 2008) ("[U]nless another statute or a regulation authorizes disclosure of the information, the Trade Secrets Act requires each agency to withhold any information it may withhold under Exemption 4 of the FOIA.").

[20] We do not opine on the outer bounds of an agency's discretion to release documents that fall under the second category, but we note that the OIP advises agencies that they "generally should" utilize the privacy exemption when a document qualifies. OIP Op. Ltr. No. 06-04, at 4.

constitution, or a court order – independently requires an agency to withhold the sought records. There is no right of nondisclosure under UIPA, only agency discretion to utilize the enumerated exceptions. Because there is no "'right' at issue in order for the court to issue relief," Rees, 113 Hawai'i at 458, 153 P.3d at 1143, the circuit court correctly dismissed all of SHOPO's UIPA claims in the August 13, 2018 Order.

**B.  The Legislature's Adoption of Heightened Privacy Protections Under UIPA Does Not Affect What the Constitution's Privacy Provision Protects**

This brings us to Civil Beat's second point of error: whether the circuit court erred by conflating the constitutional privacy standards with the UIPA privacy standards. In its January 3, 2019 Order, the circuit court applied UIPA's privacy provisions despite its prior determination, which remained intact, that SHOPO lacked a UIPA cause of action. But because SHOPO lacked a UIPA cause of action, the circuit court's review of the documents as related to SHOPO's complaint should have been limited to whether disclosure would violate the Hawai'i Constitution's privacy provision. However, Civil Beat's cross-claim arose directly under HRS § 92F-15, as Civil Beat is an aggrieved requester, and so the circuit court ultimately did not err by evaluating the records under Peer News. That said, Civil Beat is correct that Peer News and the constitutional privacy inquiry are not the same.

34

The constitutional right of privacy is not coextensive with the privacy interests protected by the legislature.  The plain language of the constitutional provision itself compels this conclusion.  Article I, section 6 provides: "The right of the people to privacy is recognized and shall not be infringed without the showing of a compelling state interest.  The legislature shall take affirmative steps to implement this right."  SHOPO points to the last sentence of the constitutional privacy guarantee in support of its argument that UIPA and constitutional privacy protections are interrelated and that the legislature may define the scope of the right.  But requiring the legislature to "implement" the right does not mean the legislature is empowered to change its definition.  "To implement" means to "carry out" or to "accomplish."  Implement, Merriam-Webster Dictionary, https://perma.cc/3M37-WU6M.  That the legislature is charged with "implement[ing]" the privacy protection, then, means that the legislature must take "affirmative steps" to "carry out" the constitution's protections; this responsibility does not equate to authority to reformulate what it is, exactly, the constitution protects.[21]

---

[21]    Contrast the right to privacy with the right to a clean and healthful environment protected by article XI, section 9 of the Hawaiʻi Constitution.  The latter provides in relevant part: "Each person has the right to a clean and healthful environment, as defined by laws relating to environmental quality[.]"  Haw. Const. art. XI, § 9 (emphasis added).  Because the constitution explicitly delegates to the legislature the

35

As in Peer News, SHOPO has pointed to statements made at the constitutional convention in support of the argument that the legislature may "broaden" what the constitution protects:

> We in the bill of rights committee could have gone through the process of listing all the different ways in which the right to privacy should be protected, but we felt that this was not our job as constitutional delegates, that we should merely state broad principles and then let the legislature balance all the different kinds of rights - the Freedom of Information Act, the right of the people to know (though not put in our Constitution, it still exists), the right of attorneys to discover information, the freedom of the press. The legislature should balance all of these different competing rights and then have something which would implement the right of privacy.

Peer News, 138 Hawaiʻi at 66 n.9, 376 P.3d at 14 n.9 (quoting 2 Proceedings of the Constitutional Convention of Hawaiʻi of 1978, at 639 (1980)).

This language is consistent with the conclusion that the constitutional directive to "implement" the right to privacy meant that the legislature was tasked with determining "all the different ways in which the right to privacy should be protected." Id. (emphases added). In other words, the drafters envisioned that the legislature would craft laws that struck the right balance between open government and individual privacy, protecting the latter while ensuring the former. UIPA is one

---

responsibility of defining the right to a clean and healthful environment, the framers "len[t] flexibility to the definition of the right over time. . . . [It] can be reshaped and redefined through statute, ordinance and administrative rule-making procedures and [is] not inflexibly fixed." In re Application of Maui Elec. Co., Ltd., 141 Hawaiʻi 249, 261, 408 P.3d 1, 13 (2017) (citation omitted) (formatting altered). By contrast, the privacy right is to be implemented, not defined, by the legislature. This difference is meaningful.

36

such law that "implements article I, section 6[.]" SHOPO v. SPJ, 83 Hawai'i at 396, 927 P.2d at 404; see also Painting Indus. of Hawai'i Mkt. Recovery Fund v. Alm, 69 Haw. 449, 452, 746 P.2d 79, 81 (1987). But the plain language of the constitutional provision and the intent of the drafters do not support the contention that the legislature, while obligated to take steps to protect privacy, is empowered to reconstitute what the constitutional provision itself protects.

Indeed, any other conclusion would result in absurdity. As Civil Beat points out, construing UIPA to be coextensive with the constitution results in the absurdity that, because UIPA bears only on government personnel records, public employees would seem to enjoy heightened constitutional protections relative to the rest of the citizenry. In fact, because the statute as it existed until Act 47 carved out county police officers specifically, the constitution would offer even more protections to police than to other public employees. These are not tenable results.

Rather, the constitution "establishes a floor" upon which the legislature is free to impose additional privacy protections, and to extend those protections to different groups. Peer News, 138 Hawai'i at 66, 376 P.3d at 14. We considered the legislature's authority to impose heightened privacy protections in Peer News. "[A]rticle I, section 6

37

establishes a floor for protection of privacy rights, but does not preclude the legislature from providing greater protection." Id. Said differently, "the legislature is [not] powerless to amend the statutory right to privacy to provide protections beyond what was discussed in SHOPO v. SPJ." Id. But those legislatively-created protections are, as we noted, statutory. We also went on to reject SHOPO's contention that "it is the [l]egislature's exclusive role to 'define' the constitutional privacy right." Id. In short, while the content of what the constitutional privacy provision protects remains bedrock, the legislature is tasked with implementing those protections, and it may also heighten them as it deems appropriate.[22] It has done both in UIPA, first by protecting from disclosure documents "which, if disclosed, would constitute a clearly unwarranted invasion of personal privacy," HRS § 92F-13(1), and (pre-Act 47) by widening the scope of what constitutes "significant privacy

---

[22] SHOPO points to State v. Kam, 69 Haw. 483, 748 P.2d 372 (1988), as an example of this court "broadening [] the right of privacy protected by article I, section 6[.]" Kam reversed the convictions of two booksellers who had been charged with "promoting pornography" because, "[s]ince a person has the right to view pornographic items at home, there necessarily follows a correlative right to purchase such materials for this personal use, or the underlying privacy right becomes meaningless." 69 Haw. at 495, 748 P.2d at 380. Rather than representing a "broadening" of the privacy right, the Kam case indeed strikes to the very core of the right to privacy: "the right to control certain highly personal and intimate affairs of his own life," including what one chooses to read in the sanctuary of the home. Id. at 492, 748 P.2d at 378 (quoting Stand. Comm. Rep. No. 69 in 1 Proceedings of the Constitutional Convention of Hawaiʻi of 1978, at 674-75 (1980)).

38

interest" beyond what the constitution mandates, HRS § 92F-14(b)(4).

This leads to the question: what, exactly, does the constitution protect?  Civil Beat is correct that Peer News did not overrule SHOPO v. SPJ in its entirety.  Peer News concluded that SHOPO v. SPJ was not controlling under the circumstances because SHOPO v. SPJ's conclusion that a government employee's misconduct records were not protected by the constitutional privacy right did not bear on the issue of whether "disclosure would violate the police officers' privacy interests under the UIPA, as amended by Act 242."  138 Hawai'i at 65-66, 376 P.3d at 13-14.  Thus, the Peer News court was clear that it was ruling on statutory grounds, and we have more recently cited SHOPO v. SPJ for its constitutional principles.  See Civil Beat Law Ctr. for the Pub. Interest, Inc. v. City and County of Honolulu, 144 Hawai'i 466, 480, 445 P.3d 47, 61 (2019).  Indeed, we reaffirmed the vitality of SHOPO v. SPJ in Peer News itself, clarifying that information not endowed by a "significant privacy interest" per HRS § 92F-14 was subject to the "scintilla" test: "[p]ursuant to SHOPO v. SPJ, if a police officer is discharged rather than suspended as a result of a disciplinary action" – a carve-out under HRS § 92F-14 but inapplicable to the sought records in that case – "disclosure would be required upon showing a mere 'scintilla' of public interest in disclosure."

39

Peer News, 138 Hawai'i at 68 n.11, 376 P.3d at 16 n.11 (citation omitted).

Thus, SHOPO v. SPJ's constitutional holding – that "information regarding a police officer's misconduct in the course of his or her duties as a police officer is not within the protection of Hawai'i's constitutional right to privacy" - remains good law. 83 Hawai'i at 397, 927 P.3d at 405. The SHOPO v. SPJ court arrived at this conclusion by considering "the history of article 1, section 6 . . . , our prior interpretation of that section, and the great weight of authority from other jurisdictions[.]" Id. The court noted that reports from the 1978 Constitutional Convention indicate the drafters intended to prevent

> the possible abuses in the use of highly personal and intimate information in the hands of government or private parties but [privacy] is not intended to deter the government from the legitimate compilation and dissemination of data. More importantly, this privacy concept encompasses the notion that in certain highly personal and intimate matters, the individual should be afforded freedom of choice absent a compelling state interest.

Id. (citing Comm. Whole Rep. No. 15 in 1 Proceedings of the Constitutional Convention of Hawai'i of 1978, at 1024 (1980)).

SHOPO v. SPJ analogized "highly personal and intimate information" to that protected by the tort of invasion of privacy: "Sexual relations, for example, are normally entirely

40

private matters, as are family quarrels, many unpleasant or disgraceful or humiliating illnesses, most intimate personal letters, most details of a man's life in his home, and some of his past history that he would rather forget." Id. at 398, 927 P.2d at 406 (alterations omitted) (citing Restatement (Second) of Torts § 652D cmt. B (Am. Law Inst. 1977)). The court agreed with other jurisdictions that had concluded that "information regarding charges of misconduct by police officers, in their capacities as such, that have been sustained after investigation and that have resulted in suspension or discharge is not 'highly personal and intimate information' and, therefore, is not within the protection of Hawaiʻi's constitutional right to privacy." Id. at 399, 927 P.2d at 407. While public employees' personnel records might contain "highly personal and intimate information," the contents of those records that related to misconduct did not implicate the constitution. Id. at 399-400, 927 P.2d at 407-08.

Reading Peer News and SHOPO v. SPJ together, an agency may (and "generally should" per OIP Op. Ltr. No. 06-04, at 4) withhold records when the information contained therein implicates a significant privacy interest per HRS § 92F-14 and the public's interest does not outweigh the privacy interest. If a denied requester brings suit, the court must review whether that determination was correct, applying Peer News. But when an

41

agency has determined that it may or must disclose pursuant to UIPA, any recourse is to the constitution (or, if applicable, a different confidentiality statute). The mere fact that the records relate to a statutory privacy interest recognized by HRS § 92F-14 does not mean that the agency's decision to disclose violates the constitution (and indeed, as discussed in Part IV.C.1 below, the statutory privacy interest invoked in this case no longer exists). Rather, as we settled in SHOPO v. SPJ, the agency's decision should only be reversed if the information in the records is of a "highly personal and intimate" character. Accordingly, the circuit court erred by applying UIPA's substantive standards to SHOPO's complaint after correctly concluding SHOPO lacked a cause of action to enforce UIPA.

C.   **UIPA Compelled Disclosure of the Redacted Arbitration Award and Closing Report**

Although the circuit court erred by applying the Peer News test – which is rooted solely in the statutory protections of UIPA – to SHOPO's complaint when SHOPO lacked a cause of action to enforce UIPA, Civil Beat's cross-claim squarely raised the issue of whether UIPA mandates the disclosure of the sought records. On appeal, SHOPO challenges the circuit court's application of the Peer News balancing test. We agree with the circuit court and hold that UIPA requires the disclosure of the redacted arbitration award and closing report.

42

### 1. Act 47 governs this case

We first address what version of UIPA applies to this case in light of the legislature's passage of Act 47 while the appeal was pending. HRS § 92F-14(b)(4) recognizes a significant privacy interest in a personnel file, except for employment misconduct information resulting in suspension or discharge; while the misconduct information exception formerly did not apply to "county police department officers" (save those cases resulting in an officer's discharge), Act 47 amended the law such that officers' misconduct records are now treated the same as those of any other public employee. Civil Beat and the City argue that there is now no longer a statutory "significant privacy interest" in police misconduct records, a provision that was the "linchpin" of SHOPO's arguments throughout the litigation.[23] SHOPO responds that Act 47 does not apply to this

---

[23] This issue has been framed by the parties as one of mootness. Civil Beat argues that SHOPO "no longer has an effective remedy" because "[i]t would be irrelevant if a court declared whether the public interest outweighed Sgt. Cachola's privacy interests[.]" The City agrees, urging us to draw from federal law. In United States Department of Justice v. Provenzano, 469 U.S. 14 (1984), for instance, the Supreme Court accepted certiorari to resolve the discrete question of whether a certain statute was a "withholding statute" within the meaning of FOIA; when Congress changed the law to make unambiguously clear that the answer was "no," the Court determined the case was moot. Id. at 15; see also United States v. Microsoft Corp., 138 S. Ct. 1186, 1188 (2018); United States Dep't of Treasury v. Galioto, 477 U.S. 556, 559-60 (1986). The City contends that, as in those cases, "SHOPO is asking this Court to interpret and apply a provision[] of the law no longer applicable to the records at issue," and where a change in law "conclusively resolves any question" of the propriety of the challenged disclosure, the dispute is moot.

While we agree Act 47 affects the outcome of this case, we disagree that it moots the case. "A case is moot if it has lost its

43

dispute because the request was made before Act 47 took effect, and that applying Act 47 would constitute retroactive application of a new law, which is generally forbidden.[24]

No one disputes that the records are not subject to the old law simply because they were created before Act 47 was passed.[25] The parties disagree, however, about whether the timing of the request for the records should be dispositive. Per SHOPO, we must apply the law in effect at the time of the request (which, here, was pre-Act 47), and any other reading of the law would impose impermissible retroactive effect. Civil Beat and the City argue the law as it exists now should govern because the legislature intended that "going forward, the public be able to access [these] records," and applying a new law is only impermissible when a right has vested.

---

character as a present, live controversy of the kind that must exist if courts are to avoid advisory opinions on abstract propositions of law." Kahoʻohanohano v. State, 114 Hawaiʻi 302, 332, 162 P.3d 696, 726 (2007). As explained in this opinion, not all of the records fall outside the purview of Peer News, even applying Act 47, and SHOPO raises procedural arguments that require our attention separate and apart from Act 47. In short, the dispute remains "live." Id.

[24] Act 47 took effect "upon its approval" – September 15, 2020. Act 47 § 7.

[25] This was settled in SHOPO v. SPJ. In that case, two separate Acts threatened to affect the litigation, and regarding the first, this court addressed whether records that were created before amendments to UIPA were subject to the old or the new version of the law. The court held that the relevant Act "affects only an agency's prospective duty of disclosure" and that duty does not change depending on when the records came into existence. 83 Hawaiʻi at 389-90, 927 P.2d at 397-98.

Although SHOPO is correct that retroactive application of a new law is disfavored and must be supported by clear legislative intent, applying Act 47 to this case would not be applying it retroactively. "Every statute which takes away or impairs vested rights acquired under existing laws, or creates a new obligation, imposes a new duty or attaches a new disability in respect to transactions or considerations already past, must be deemed retrospective." Taniguchi v. Ass'n of Apartment Owners of King Manor, Inc., 114 Hawaiʻi 37, 47, 155 P.3d 1138, 1148 (2007) (quoting Graham Const. Supply, Inc. v. Schrader Const., Inc., 63 Haw. 540, 545, 632 P.2d 649, 652 (1981)). Act 47 "imposes a new duty" of disclosure onto agencies, and that duty applies prospectively – which is why SHOPO is correct that the City is not obligated to review all past UIPA requests and ensure they complied with the Act.

"However, a statute does not operate retroactively merely because it relates to antecedent events, or because part of the requisites of its action is drawn from time antecedent to its passing, but is retroactive only when it is applied to rights acquired prior to its enactment." Emps. Ret. Sys. of the Territory of Hawaii v. Wah Chew Chang, 42 Haw. 532, 536 (Haw. Terr. 1958) (citation omitted). Although there are antecedent events at issue here – namely the initial UIPA request – no rights vested by virtue of the fact that the records request was

45

made while the old version of the law was in effect (even under the tenuous assumption that the records could have been withheld pre-Act 47). In SHOPO v. SPJ, we cited approvingly to a Texas Supreme Court opinion that explained: "The Legislature has not, by determining that government information formerly kept confidential should be disclosed, impaired any vested right of a claimant to the confidentiality of the information."[26] Indus. Found. of the S. v. Texas Indus. Acc. Bd., 540 S.W.2d 668, 677 (Tex. 1976); SHOPO v. SPJ, 83 Hawaiʻi at 390, 927 P.2d at 398 (citing to Indus. Found. for the principle that the "Open Records Act does not impair any vested right").

Moreover, "[w]hen the intervening statute authorizes or affects the propriety of prospective relief, application of the new provision is not retroactive." Landgraf v. USI Film Prod., 511 U.S. 244, 273 (1994). This litigation turns on relief that is equitable in nature: SHOPO seeks an injunction preventing, essentially, the disclosure of the records, and "relief by injunction operates in futuro[.]" Id. at 274. Civil Beat seeks the opposite: an order mandating that the records be disclosed. "Disclosure . . . takes place only in the present or the future." Wisniewski v. Kownacki, 851 N.E.2d 1243, 1249 (Ill. 2006).

---

[26] And indeed, as set forth above, there is simply no right of nondisclosure under UIPA, and no right would therefore be impaired by applying Act 47 to this case.

46

SHOPO v. SPJ arose under similar circumstances, and SHOPO argues we should follow the approach of that case. Act 242 was passed in 1995 during the pendency of the litigation. SHOPO v. SPJ, 83 Hawaiʻi at 384, 927 P.2d at 392. As we later interpreted it in Peer News, Act 242 expanded the scope of HRS § 92F-14's privacy interest for police officers' misconduct records to extend to all records except those resulting in the officer's discharge. We considered whether the change mooted the litigation insofar as it was then clear that at least some of the sought records – those relating to officer suspensions – would not be subject to disclosure after Act 242 took effect:

> The argument is without merit. Section 4 of Act 242 expressly provides that "[t]his Act does not affect rights and duties that matured, penalties that were incurred, and proceedings that were begun, before its effective date." 1995 Haw. Sess. L. Act 242, § 4 at 643. The instant proceedings were begun well before the July 6, 1995 effective date and are, therefore, not affected by Act 242. Accordingly, we hold that Act 242 does not moot this litigation.

Id. at 391, 927 P.2d at 399.

SHOPO v. SPJ's mootness holding is distinguishable. Act 47 does not have a savings clause, and there is therefore no evidence the legislature intended ongoing litigation to be unaffected by the Act. Courts generally apply the law in effect at the time they render their decision. Gov't Emps. Ins. Co. v. Hyman, 90 Hawaiʻi 1, 5, 975 P.2d 211, 215 (1999) (citing Landgraf, 511 U.S. at 273, for the principle that, although in

47

tension with the presumption against retroactivity, "in many situations, a court should 'apply the law in effect at the time it renders its decision.'"). Although "[t]hese judicial principles of construction . . . do not apply if the legislature expressly limits the temporal scope of the statute," id., the legislature did not do so here.

SHOPO has pointed to HRS § 1-3 (2009) to suggest that Act 47 does not control here. HRS § 1-3 provides: "No law has any retrospective operation, unless otherwise expressed or obviously intended." But this should not be read as a universal "limit[ation on] the temporal scope of the statute." Gov't Emps. Ins., 90 Hawaiʻi at 5, 975 P.2d at 215. Rather, HRS § 1-3 codifies the common law presumption against retroactivity – of which, as explained above, application of Act 47 does not run afoul because it does not impair existing rights in relation to past events.[27]

Indeed, the legislature frequently includes savings clauses in legislation. See, e.g., 1995 Haw. Sess. Laws Act

---

[27] Contrast HRS § 1-3 with a general savings statute, such as 5 Ill. Comp. Stat. Ann. 70/4 (West 2016). Under Illinois law, the operation of that statute elides the need to analyze whether any existing rights are impaired by operation of a statute to the given case because the legislature has prescribed that substantive laws shall not be applied to pending cases, while procedural laws shall. Perry v. Dep't of Fin. & Pro. Regul., 106 N.E.3d 1016, 1027 (Ill. 2018). In Illinois, "after determining that a change is substantive, we need not reach the issue of whether application of the substantive change would have a retroactive impact or operation" because the legislature has explicitly set out the temporal applicability of substantive amendments. Id.

48

242, § 4 at 643; 2004 Haw. Sess. Laws Act 44, § 29 at 227.  This suggests a savings clause operates differently from the retroactivity prohibition in HRS § 1-3, or else the former would always be redundant.  And Civil Beat correctly points out that the legislature included a savings clause in an earlier draft of Act 47, but ultimately removed it.  HB 285, H.D. 1, S.D.2, Proposed C.D.1 § 10, 30th Leg., Reg. Sess. (2020), available at https://perma.cc/HF5K-ZFCR.  Thus, the presumption that the law as it currently exists applies, unless doing so would give a law impermissible "retroactive operation" under HRS § 1-3 – that is, it would impair existing vested rights – or the legislature has spoken otherwise by, say, including a savings clause.

For the reasons above, the application of Act 47 would not impair existing vested rights, nor has the legislature indicated that Act 47 should not apply to pending cases.  Accordingly, Act 47 applies to this case.

2. **To the extent the sought documents are not of the kind enumerated in HRS § 92F-14(b)(4)(B)(i)-(iv), those portions of the records remain subject to Peer News**

That Act 47 applies does not end our analysis.  SHOPO rightly points out that the amendment to HRS § 92F-14 removed the county police officer carve-out but did not alter the general privacy interest in an employee's personnel file.  That generally-applicable privacy interest is excepted for only five categories of information "related to employee misconduct": "(i)

49

The name of the employee; (ii) The nature of the employment related misconduct; (iii) The agency's summary of the allegations of misconduct; (iv) Findings of fact and conclusions of law; and (v) The disciplinary action taken by the agency[.]" HRS § 92F-14(b)(4)(B)(i)-(v). To the extent information contained in the records does not fall within one of the above five categories, it remains part of the general "personnel file" in which an employee retains a significant privacy interest and, in turn, would be subject to the privacy/public interest balancing test expounded in Peer News.

We must therefore determine whether and which parts of the sought records fall within, and outside of, those five categories. The arbitration award presents a straightforward question – that record is composed almost entirely of findings of fact and conclusions of law.[28] HRS § 92F-14(b)(4)(B)(iv). Act 47 has therefore altered the law to remove the arbitration award from the ambit of HRS § 92F-14's "significant privacy interest[s]," and the lower standard set out in SHOPO v. SPJ, not the more stringent balancing test from Peer News, applies.

_____

[28] There is some prefatory language before the findings of fact and conclusions of law describing the arbitration procedure – for instance, the witnesses called and the names of the attorneys. Disclosure of this information does not pose privacy concerns. Additionally, the arbitration was redacted to remove, inter alia, the names of some witnesses and other private information.

50

But whether or not some or all of the closing report falls outside the enumerated categories of HRS § 92F-14(b)(4)(B) presents a closer question. The closing report certainly contains information about the nature of the misconduct and HPD's summary of the allegations of misconduct per HRS §§ 92F-14(b)(4)(B)(ii)-(iii). However, the closing report arguably goes beyond those statutory categories insofar as it provides a considerable amount of detail, including extensive interviews with those involved. But we need not and do not engage in the kind of fine-tuned statutory interpretation of HRS § 92F-14(b)(4)(B) that categorizing the closing report demands. Rather, we assume, without deciding, that the closing report in its entirety falls <u>outside</u> the scope of the enumerated categories in HRS § 92F-14(b)(4)(B) and, in turn, remains subject to <u>Peer News</u>. This is because, as Part IV.C.3 sets forth, the records are subject to disclosure even under <u>Peer News</u>.

3. **Under <u>SHOPO v. SPJ</u>, more than a scintilla of public interest weighs toward disclosure of the arbitration award**

The arbitration award must be disclosed. Under <u>SHOPO v. SPJ</u>, even a scintilla of public interest warrants disclosure of public records when there is no significant privacy interest on the other side of the ledger, which is true of findings of facts and conclusions of law related to police misconduct

51

resulting in suspension or discharge.  83 Hawaiʻi at 383–84, 927 P.2d at 391–92; see also Peer News, 138 Hawaiʻi at 69 n.11, 376 P.3d at 17 n.11.  Black's Law Dictionary defines "scintilla" as a mere "spark or trace."  Scintilla, Black's Law Dictionary (11th ed. 2019).  The "scintilla" test is therefore a low hurdle that the arbitration award clears easily.  The contents of that document reveal why Sergeant Cachola – who was terminated after a widely-circulated video portrayed him apparently assaulting a woman – was reinstated to the force.  The public's interest in understanding "the proper performance of public duty" and "how the police department supervises its employees and responds to allegations of misconduct" far surpasses the required scintilla.  Peer News, 138 Hawaiʻi at 73-74, 376 P.3d at 21-22.

4.    **The Peer News balancing test weighs toward disclosing the redacted closing report**

We assume without deciding that the redacted closing report remains subject to Peer News for the reasons stated above in Part IV.C.2.  Applying the balancing test prescribed by that case, we hold that the records must be disclosed.

Peer News evaluated the privacy exception codified in HRS §§ 92F-13 and 92F-14 and concluded that "for a 'significant privacy interest,'" like that conferred to police officers in their disciplinary records, "to constitute a 'clearly unwarranted invasion of personal privacy,' the privacy interest

52

at stake must be balanced against the public interest in disclosure of the information."  138 Hawai‘i at 68, 376 P.3d at 16.  In other words, in order for records regarding police misconduct to be exempt from disclosure under UIPA, the public interest cannot outweigh the officer's privacy interest.  If it does, disclosure would not be a "clearly unwarranted invasion of privacy," and an agency would be required to release those non-exempt records.

While we did not prescribe the particulars of the balancing test in Peer News, we provided some guiding principles.  We recognized in Peer News that while a police officer has a significant privacy interest in their misconduct records by statute, the public has an interest – often a "compelling" one – in public accountability for the police.  Id. at 74, 376 P.3d at 22.  We opined that based on legislative history, "[t]he more egregious the misconduct, the more likely the public interest would outweigh the individual privacy interest."  Id. at 71, 376 P.3d at 19.  We also emphasized that records that furnish information to "gauge the police department's responsiveness to specific instances of misconduct and assess whether the agency is accountable to itself internally" would be of public interest.  Id. at 74, 376 P.3d at 22 (brackets omitted) (quoting Rutland Herald v. City of Rutland, 84 A.3d 821, 825 (Vt. 2013)).  The public's interest

53

extends to those investigating misconduct and those accused of misconduct: "the public should be [as]sured that both the activity of public employees suspected of wrongdoing and the conduct of those public employees who investigate the suspects is open to public scrutiny." Id. (citation and brackets omitted). And we noted:

> Police officers are entrusted with the right to use force - even deadly force in some circumstances - and this right can be subject to abuse. Public oversight minimizes the possibility of abuse by ensuring that police departments and officers are held accountable for their actions. The press's access to records such as those at issue here is one of the primary channels through which such public oversight can operate.

Id.

The circuit court correctly applied the Peer News balancing test when it concluded that UIPA mandates the City to disclose the redacted closing report. The sought records are of significant public interest both for their value in shedding light on HPD's responsiveness to misconduct and to show why Sergeant Cachola was found fit for public duty. While Sergeant Cachola had a significant privacy interest in his disciplinary records, the circuit court correctly concluded that, as a matter of law, that interest is outweighed by the public's interest.

On the public interest side of the ledger, "there is a significant public interest in knowing how the police department supervises its employees and responds to allegations of misconduct." Id. at 73-74, 376 P.3d at 21-22. The redacted

54

closing report provides such information. First, the closing report, especially viewed in tandem with the arbitration award, provides details worthy of public review about the information giving rise to the initial termination decision and the reasons for reinstatement. Second, the closing report contains information about how officers immediately responding to the 911 call investigated the incident. The public's interest in understanding HPD's response to misconduct extends from the immediate response to the final disposition. In short, the closing report is valuable to the public because its contents help "gauge the police department's responsiveness to specific instances of misconduct and assess whether the agency is accountable to itself internally." Id. at 74, 376 P.3d at 22 (brackets and citations omitted).

The public also has an interest in understanding why Sergeant Cachola was ordered back on the force. "[T]he appropriate concern of the public as to the proper performance of public duty is to be given great weight." Id. at 73, 376 P.3d at 21 (quoting Cowles Publ'g Co. v. State Patrol, 748 P.2d 597, 605 (Wash. 1988)). The closing report reveals the facts giving rise to his termination and subsequent reinstatement. The allegations against Sergeant Cachola – domestic violence – were serious and have been in the public eye for years. The public's ability to understand the conclusion that termination

was unwarranted is key to establishing public confidence that Sergeant Cachola was deemed fit for the force.

On the other hand, we assume without deciding that Sergeant Cachola has a "significant privacy interest" in his misconduct records pursuant to HRS § 92F-14. But the public interest here is indeed overwhelming, and the underlying events giving rise to the misconduct allegations took place almost entirely in public. And though the acts occurred while he was off-duty, if "the off duty acts of a police officer bear upon his or her fitness to perform public duty or if the activities reported in the records involve the performance of a public duty," the public has an interest in disclosure. Id. (citation omitted).

Throughout the litigation, SHOPO has encouraged adopting the framework expounded by the concurrence in Peer News, but SHOPO has failed to articulate why the factors in the concurrence would point against disclosure. Nor do we agree with any suggestion that the balancing test constitutes a checklist. The concurrence identified the following factors based on an OIP opinion letter: officer rank, "degree of wrongdoing and strength of evidence," other available means to acquire the information, "whether the information sought sheds light on a government activity," and "whether the information sought is related to job function[.]" Id. at 81-82, 376 P.3d at

56

29-30 (Pollack, J., concurring) (citing OIP Op. Ltr. No. 10-03 (Oct. 5, 2010)). While many of the factors cited by the Peer News concurrence might be useful or relevant depending on the circumstances of the individual case, they are neither necessary nor dispositive.[29] The OIP opinion upon which the concurrence relied was clear that these factors are "nonexclusive." OIP Op. Ltr. No. 10-03. Accordingly, the circuit court need not apply each in turn to come to the correct legal conclusion. And that the circuit court in this case did not address factors identified by a concurring opinion, to which it was not bound, is not grounds for reversal of a correct judgment.[30]

---

[29] While these factors may sometimes aid an agency or court in evaluating whether UIPA requires disclosure, we offer three observations: First, when it comes to police misconduct, the rank of the officer is relevant insofar as a higher rank would weigh more heavily toward the public interest. But the opposite is not true; that is, the public's interest in misconduct by a lower-ranked officer is not diminished simply because of their rank. Police officers of all ranks "are entrusted with the right to use force - even deadly force in some circumstances - and this right can be subject to abuse." Peer News, 138 Hawaiʻi at 74, 376 P.3d at 22. Misconduct by the rank-and-file is not necessarily shielded from disclosure under UIPA.

Second, for the same reason, "whether the information sheds light on government activity" should not preclude disclosure under UIPA simply because the sought document does not relate to a department's oversight of misconduct. Given the unique role police play in the community and the other reasons stated in Peer News, the public has an interest understanding why a particular officer is on the force. That a sought record can shed light on public oversight can heighten public interest, but that a record bears only on an individual officer should not necessarily diminish it.

Third, any consideration of alternative means of acquiring the sought information should take into consideration the quality and difficulty of obtaining these alternatives. If all non-private information is already in the public domain, then this factor would counsel against disclosure. But a requester should not be forced to settle for a poor or incomplete substitute, nor should it be required to incur significant delay or financial loss in seeking alternatives.

[30] But applying the relevant factors here de novo, we note that Cachola is a sergeant; he was accused of very serious wrongdoing; there are

57

In sum, the circuit court correctly concluded that the report must be disclosed because of the seriousness and public nature of the misconduct, and the public's interest in evaluating "[t]he proper performance of public duty" and understanding how HPD "supervises its employees and responds to allegations of misconduct." Peer News, 138 Hawai'i at 73-74, 376 P.3d at 21-22 (citation omitted). UIPA requires the disclosure of the redacted closing report.[31]

## D. SHOPO Is Entitled Neither to Declaratory nor to Injunctive Relief, and the City Was Not Required to Supply a Written Explanation for Disclosure

We next turn to the other arguments raised by SHOPO's appeal. First, SHOPO argues that the circuit court did not address its request for declaratory and injunctive relief, which it sought to "explain[] what Defendant City's duties and responsibilities are under the UIPA following a public request for police suspension records, and to order Defendant City to

---

no readily available alternative means to acquire the information; for the reasons above, the information sheds light on police oversight and response to misconduct; and while Sergeant Cachola was off-duty, the information bears on his suitability to be a police officer. Contrary to SHOPO's arguments, these factors weigh toward, not against, disclosure.

[31] While the closing report as a whole is subject to disclosure, we ordered several additional redactions to protect personal, private information of little interest to the public. Information like where those involved in the incident – particularly nongovernmental witnesses – lived or stayed and personal medical information fall in the ambit of "highly personal and intimate information" protected by the Hawai'i Constitution. SHOPO v. SPJ, 83 Hawai'i at 398, 927 P.2d at 406. If that information is unrelated to the public's interest in disclosure – as is the case here – it must be redacted.

58

comply with those duties and responsibilities before releasing confidential information for public dissemination."

In fact, in addition to summarily dismissing all remaining claims in the April 29, 2019 Order, the circuit court did issue a conclusion of law regarding this requested relief:

> 14. The Court respectfully disagrees with SHOPO's claim or inference that the City did not conduct any kind of balancing analysis and that therefore this Court is in essence conducting the first balancing test for these records. The Court sees no evidence in the record to support this claim. Just because the agency is not required to give a plaintiff a written/reasoned explanation for disclosure does not mean no balancing test was performed.

Nonetheless, SHOPO argues declaratory and injunctive relief is warranted because "[the] City cannot be allowed to circumvent its responsibilities and violate the undisputed privacy rights of its employee." Otherwise, "a flood of costly litigation wherein the courts, not the responsible agencies, will be forced to conduct the 'highly factual' initial balancing test to determine whether the release of private information is appropriate" will ensue. It urges this court to hold that under UIPA, the agency must conduct the initial balancing inquiry, and "[i]f the public's interest in disclosure does not outweigh the privacy interests of the individual police officers, such disclosure . . . must be denied." Here, SHOPO argues, it was error for the court, not the City, to itself conduct this balancing test.

59

The circuit court correctly dismissed the declaratory and injunctive relief claims because these claims for relief emanate from UIPA.  For the same reasons explained in Part IV.A, SHOPO lacks a cause of action to enforce UIPA here.

Even if that were not the case, dismissal of the declaratory and injunctive relief claims would still be correct because there is no basis in the statutory scheme to order the relief for which SHOPO is asking.  The circuit court rightly concluded as a matter of law that "the agency is not required to give a plaintiff a written/reasoned explanation for disclosure." And SHOPO's argument that the City has failed to comply with UIPA is premised on an incorrect construction of the statute. As set forth above, UIPA does not forbid disclosure, so an agency's "duties" under UIPA do not include performing a balancing test to determine whether it must withhold the records.  The opposite is true; the City was required to determine whether the public interest outweighs the private interest such that UIPA mandated that it release the records. The circuit court rightly declined to impose a procedural burden – written opinions by an agency to all affected parties upon compliance with its UIPA duties – that nowhere exists in Chapter 92F.

SHOPO also claims it was denied the right to appeal to the OIP.  This contention is also meritless as SHOPO never had a

60

right to appeal to the OIP.[32]  The OIP has jurisdiction pursuant to HRS § 92F-42(1) to review an agency's granting of access, and we see no reason why SHOPO could not have requested such review here.  But an agency appeal to the OIP may only be brought under HRS § 92F-15.5 (2012), which, like HRS § 92F-15, allows for agency appeals to those who have been denied access.[33]  This scheme is consistent with the analysis above: since UIPA exemptions do not require nondisclosure, SHOPO had no right to seek relief from the OIP based on a grant of access.

---

[32]      For the same reason, the OIP's regulations in the Hawai'i Administrative Rules (HAR) § 2-73-15, which SHOPO argues "could have" been referred to by the circuit court in applying the Peer News test, are irrelevant.  For one, SHOPO was not entitled to appeal to the OIP; for another, that regulation sets forth the procedures for an OIP appeal, not the substantive standard the agency applies.

[33]      HRS § 92F-15.5, "Alternative method to appeal a denial of access," provides:

> (a) When an agency denies a person access to a government record, the person may appeal the denial to the office of information practices in accordance with rules adopted pursuant to section 92F-42(12).  A decision to appeal to the office of information practices for review of the agency denial shall not prejudice the person's right to appeal to the circuit court after a decision is made by the office of information practices.

> (b) If the decision is to disclose, the office of information practices shall notify the person and the agency, and the agency shall make the record available.  If the denial of access is upheld, in whole or in part, the office of information practices shall, in writing, notify the person of the decision, the reasons for the decision, and the right to bring a judicial action under section 92F-15(a).

61

**E.    SHOPO Was Not Denied Due Process**

SHOPO's claim that it was denied due process is also meritless.  SHOPO argues that it was denied "an opportunity to conduct discovery, to review the materials submitted to the Court including the City's redactions to the subject records, and an opportunity to provide additional materials and information for the Circuit Court's consideration."  It contends these actions constitute a violation of their due process right to notice and an opportunity to be heard in a meaningful time and in a meaningful manner.

SHOPO's right to due process was not violated, even assuming the circuit court's actions implicate procedural due process.  "Due process is not a fixed concept requiring a specific procedural course in every situation."  Bank of Hawaii v. Kunimoto, 91 Hawaiʻi 372, 388, 984 P.2d 1198, 1214 (1999) (citing Sandy Beach Def. Fund v. City Council of the City and Cnty. of Honolulu, 70 Haw. 361, 378, 773 P.2d 250, 261 (1989)) Rather, "due process is flexible and calls for such procedural protections as a particular situation demands."  Id. (citing Sandy Beach Def. Fund, 70 Haw. at 378, 773 P.2d at 261).  In civil cases, the Hawaiʻi Rules of Civil Procedure (HRCP) set forth procedures for discovery and summary judgment; pursuant to HRCP Rule 56(f), the circuit court may deny a motion for summary judgment if the opposing party establishes that additional

62

discovery is necessary.  In U.S. Bank National Association v. Castro, 131 Hawai'i 28, 313 P.3d 717 (2013), the defendants argued that the circuit court erred by not granting them additional time for discovery prior to ruling on a motion for summary judgment.  Id. at 39, 313 P.3d at 728.  The defendant's memorandum in opposition to the motion for summary judgment mentioned a desire for additional time for discovery related to the "underlying transaction"; specifically, the defendants hoped to find an expert on "problems inherent in the securitization, sale and transfer of notes and mortgages, such as predatory lending practices[.]"  Id. (quotation marks omitted).  However, this court noted that the motion for summary judgment was based on an absence of a genuine issue of material fact as to U.S. Bank's entitlement to a judgment for possession and writ of possession, and that the defendants had not explained how discovery related to issues with mortgage lending as a whole would help them to establish a genuine issue of material fact related to the motion for summary judgment.  Id. at 39-40, 313 P.3d at 728-29.

This case resembles U.S. Bank.  SHOPO stated its desire for an opportunity to review the unredacted version of the records submitted to the court and requested the opportunity to submit additional information for the court's review in an opposition brief, but it has not explained how being allowed to

63

do either of these things would enable it to demonstrate that there is a genuine issue of material fact about whether the documents should be disclosed.[34]  In short, SHOPO has not sufficiently explained why additional process was due here. SHOPO – which is not the custodian of these documents - has no more entitlement to review the in camera records than Civil Beat did.  It would eviscerate the purpose of in camera review to allow an opposing party to see the in camera record in order to frame its argument.  Ultimately, the only evidence required for the circuit court to conclude that UIPA mandated disclosure as a matter of law was the documents themselves, and it does not appear that the circuit court precluded SHOPO from submitting additional materials in any event.  Thus, the circuit court did not violate SHOPO's due process rights by not providing SHOPO with the opportunity to conduct discovery, review the records, or submit additional materials.

**F.    The CBA Is Irrelevant**

SHOPO contends that the circuit court erred by not considering the fact that "the requested information was confidential under Article 13 of the CBA between SHOPO and [the] City."  This court settled in SHOPO v. SPJ that an agency may

---

[34]    To the extent the briefs address why SHOPO needed discovery, it argues that it needed information on how the City conducted the balancing test because of the lack of written explanation.  But for the reasons explained above, SHOPO's claim regarding this issue was properly dismissed.

not collectively bargain away its duties under UIPA – compliance with the statute is "non-negotiable."  83 Hawai'i at 404–05, 927 P.2d at 412–13.  Nothing in Peer News altered this holding.  An agency must comply with UIPA, and if the CBA would prevent that, it is unenforceable.[35]  Id.  Here, UIPA mandates disclosure, and the CBA is therefore irrelevant.

SHOPO argues that the CBA was relevant insofar as it could have been considered under the Peer News balancing test; if the information could be ascertained in a way that does not run afoul of the CBA, SHOPO relies on Justice Pollack's concurrence to argue that the "[a]vailability of other means to obtain the information" would weigh against disclosure.  Peer News, 138 Hawai'i at 81, 376 P.3d at 29 (Pollack, J., concurring).  Specifically, SHOPO argues that the disclosures required by HRS § 52D-3.5 (Supp. 2020), a provision that requires each county police chief to submit annual reports to the legislature describing misconduct incidents that resulted in the suspension or discharge of a police officer, would suffice to meet Civil Beat's request without violating the CBA.[36]

---

[35]     On the other hand, when it is in the agency's discretion whether to disclose records to the public – i.e., records for which an exemption applies, but the agency is not forbidden from disclosing (what we described in Part IV.A as category (2) documents) – complying with a CBA's confidentiality requirement would not violate UIPA.  However, this case does not present such a scenario.

[36]     Act 47 also amended HRS § 52D-3.5 to add the identity of the disciplined officer to the yearly reports.  2020 Haw. Sess. Laws Act 47, § 2 at 365.

As explained above, under Peer News, alternative means of acquiring the sought information may sometimes be relevant to the balancing test, but a requester must not be forced to settle for a poor substitute or required to undertake a more burdensome process to ascertain the information if UIPA would otherwise mandate its disclosure. Either of these consequences would be anathema to the transparency purpose of UIPA.

The legislative disclosures pursuant to HRS § 52D-3.5 are indeed a poor substitute for the arbitration award and closing report. HRS § 52D-3.5 does not require detailed information about the misconduct incident – just a summary of "the facts and the nature of the misconduct," HRS § 52D-3.5(b)(1) – and the yearly disclosures reveal nothing about the justification for a particular disciplinary action or the investigative process, which ultimately form the core of the public interest in UIPA disclosure of police misconduct records. Peer News, 138 Hawaiʻi at 73-74, 376 P.3d at 21-22.

## G. The De Novo Standard of Review Is Consistent with a "Highly Factual" Balancing Test

SHOPO claims that "[t]he [circuit c]ourt's UIPA balancing test appears to have been conducted 'as a matter of law' and not based on the 'highly factual' standard required by the Hawaii Supreme Court." It relies on the fact that in Peer News, we declined to ourselves apply the balancing test "given

66

the limited factual record," 138 Hawaiʻi at 55, 376 P.3d at 3, as well as Justice Pollack's concurrence, which described the analysis set forth in OIP opinions as "highly factual[.]" Id. at 78, 376 P.3d at 26 (Pollack, J., concurring).

The circuit court did not err by determining that the records must be disclosed "as a matter of law," nor is this in tension with a "highly factual" balancing test. HRS § 92F-15(b) instructs that "[i]n an action to compel disclosure" – which Civil Beat's counterclaim is – "the circuit court shall hear the matter de novo[.]" The balancing test prescribed by Peer News requires careful consideration of the facts, to be sure, and the circuit court did so here in the course of in camera review, precisely as Peer News instructed. 138 Hawaiʻi at 73, 376 P.3d at 21 ("As contemplated by HRS § 92F-15, the court should conduct an in camera review of the records and determine on a case-by-case basis whether disclosure is warranted." (footnote omitted)). The facts required to make that determination are, ultimately, the contents of the records. The outcome of the test based on in camera review – the determination of whether disclosure is required – is a question of law.

**H. The Circuit Court's Acknowledgment that the Process Is "Time-Consuming" Did Not Reflect a Lack of Careful Review**

SHOPO faults the circuit court for noting that the process of reviewing the records in camera was "time-consuming."

67

In context, the circuit court's "time-consuming" comment was merely an acknowledgement of the difficulty in sifting through records to weigh the public interest against the privacy interest.[37]  Noting this challenge is a far cry from "refusing to conduct a thorough and complete UIPA balancing test," as SHOPO alleges.  The circuit court's order reflects thoughtful consideration of the interests on either side of the Peer News balancing test, and as explained above, the court came to the correct conclusion.  The records are subject to disclosure.

## I.    The Circuit Court Did Not Err by Concluding that HRS § 92F-12(a)(2) Requires Disclosure of the Arbitration Award

The circuit court determined that "there is a separate and independent ground to release the arbitration award – the requirement to disclose adjudicative orders pursuant to HRS § 92F-12(a)(2)."  That statute requires disclosure of "[f]inal opinions, including concurring and dissenting opinions, as well as orders made in the adjudication of cases[.]"  HRS § 92F-12(a)(2).  SHOPO does not challenge whether the arbitration award falls into that category; rather, it argues that a

---

[37]    The full paragraph from the April 29, 2019 order reads:

> The Court finds that the HPD/City's disclosure of the proposed redacted closing report is not clearly unwarranted.  HPD is plainly trying to be transparent regarding the disciplinary investigation of the officer who was discharged and then reinstated, while balancing the privacy interests of everyone else involved.  It is a fine line, and time-consuming, to weigh these issues page by page.

disclosure under HRS § 92F-12(a)(2) is not exempt from the exceptions of HRS § 92F-13, and the "[c]ircuit [c]ourt was wrong to conclude that it [was]."

SHOPO is mistaken; the circuit court did not conclude that the arbitration award was exempt from HRS § 92F-13.  The circuit court's order stated: "Although the arbitration award, as a final adjudication award, is a mandatory disclosure under section 92F-12(a)(2), it is still subject to the privacy interests per section 92F-13(1)."  (Emphasis added.)

## J.   This Record Provides No Basis to Prohibit Disclosure of the Investigative Report

SHOPO is correct that the circuit court's order does not prohibit the City from releasing the full investigative report.  The order also does not require it, and Civil Beat has not appealed that component of the court's decision.  SHOPO's request that we remand for the circuit court to enjoin the report's disclosure is meritless because SHOPO does not have a cause of action to compel an agency to withhold a record under UIPA for the reasons explained in Part IV.A.  Nor does SHOPO contend on appeal that the investigative report violates the constitutional privacy right.  HRAP Rule 28 ("Points not argued may be deemed waived.").  There is therefore no basis on this record to order the circuit court to enjoin the disclosure of the investigative report.

69

## V. CONCLUSION

For the foregoing reasons, the circuit court erred by applying UIPA standards to SHOPO's complaint when SHOPO lacked a cause of action to sue under UIPA, but it nonetheless correctly resolved Civil Beat's counterclaim by application of the Peer News test and correctly concluded that UIPA mandated the disclosure of the redacted arbitration award and closing report. We accordingly (1) affirm the August 13, 2018 Order; (2) affirm the September 28, 2018 Order, except that to the extent that it conflates the constitutional and statutory balancing tests, that order is vacated; (3) vacate the January 3, Order; and (4) affirm the April 29, 2019 Order. The circuit court's May 24, 2019 final judgment is affirmed.

Keani Alapa (Vladimir
Devens with him on the
briefs) for appellant

Robert Brian Black
(Lisa Emily Engebretsen
with him on the briefs)
for cross-appellant

Duane W. H. Pang
(Paul S. Aoki and Molly A.
Stebbins with him on the
briefs) for appellee

/s/ Mark E. Recktenwald

/s/ Paula A. Nakayama

/s/ Sabrina S. McKenna

/s/ Michael D. Wilson

/s/ Peter T. Cahill



70